**STATE of Alaska, Appellant,**

v.

**Keith V. PRICE, Appellee.**

**No. A–1910.**

Court of Appeals of Alaska.

July 24, 1987.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

Paul E. Malin, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Keith V. Price was convicted after pleading no contest to a charge of assault in the first degree, a class A felony. AS 11.41.-200(a)(1). Price was subject to a seven-year presumptive sentence. AS 12.55.-125(c). Superior Court Judge Karl S. Johnstone found a nonstatutory mitigating factor and referred Price's case to the three-judge panel. The panel accepted jurisdiction and suspended the imposition of Price's sentence on condition that he serve one year in jail and complete five years of probation. The state appeals, contending that the sentence is too lenient. We approve the sentence imposed by the panel.[1]

Price was convicted for an assault committed upon his girlfriend, Teresa Goode. At the time of the offense, Price was eighteen years of age; Goode was sixteen. Price had begun to suspect that Goode might be interested in another man. On the morning of September 11, 1985, he went to her home to confront her. He took with him a kitchen knife. The details of the assault that followed, as related by the presentence report, are undisputed:

> Mr. Price took a knife with him and shortly thereafter, an argument ensued. As they began wrestling, the defendant told Ms. Goode, "You'd better call an ambulance, I'm getting ready to kill you." The defendant then hit the victim several times and cut her with the knife in several places about the face, neck and shoulder area.

Ms. Goode's sister, Lenore Goode, was home and tried to interrupt the fight.

---

1. When an appeal is brought by the state on grounds that the sentence imposed was too lenient, this court has authority only to express approval or disapproval of the sentence, and no actual increase of the sentence is permissible. *See* AS 12.55.120(b).

Teresa Goode was able to get past the defendant and ran outside. Ms. Lenore Goode went to the kitchen and attempted to telephone the police when Mr. Price entered the kitchen area, picked up another knife on the counter, and threatened to cut her if she called the police. They began struggling and Lenore Goode tried to get out of his grasp and was trying to run outside when he pushed her down the stairs.

Meanwhile, Teresa Goode ran across the street and was trying to get a neighbor to open the door to help her.

Mr. Price left the Goode house and saw Teresa Goode across the street. He went across the street toward her and when he saw that she was bleeding about the face and neck, he told her he would take her to the hospital. She refused. The defendant then picked the victim up and carried her to his car to take her to the hospital. Instead he drove her to the University of Alaska where his mother, Deleon Price, worked. He told Ms. Goode to stay in the car and went in to get his mother.

He returned to the car with his mother and asked her to take Teresa Goode to the hospital. The defendant had his bicycle in the back seat of the car, took it out and rode off. Mrs. Price then took the victim to the hospital where she received treatment.

. . . .

Dr. Frank Moore treated Teresa Goode at Providence Hospital. According to the doctor, Teresa sustained injuries that included cuts on both sides of her face, one that required sutures. There were two cuts on her neck and one cut behind her ear on her scalp that took away part of the hair and skin.

Later that day, Lenore Goode was examined at the hospital on Elmendorf Air Force Base. Her left wrist was fractured, which occurred when she was pushed down the stairs.

When interviewed, Price readily admitted injuring Teresa and Lenore Goode, and he expressed remorse for his conduct. He stated that he had not intended to hurt Teresa or Lenore, but that "things just got out of hand."

After entering his no contest plea to the charge of first-degree assault, Price appeared initially for sentencing before Judge Johnstone.[2] Although Price was a first felony offender, he was subject to a seven-year presumptive term because he had used a dangerous instrument in committing the assault. *See* AS 12.55.125(c)(2). At the sentencing hearing, the state alleged no aggravating factors; Price alleged that his case was mitigated because his conduct was among the least serious within the definition of the offense. *See* AS 12.55.-155(d)(9). Judge Johnstone concluded, however, that the evidence failed to establish the existence of any statutory aggravating or mitigating factors.

Relying on this court's decision in *Smith v. State*, 711 P.2d 561 (Alaska App.1985), Price argued alternatively that his favorable background and strong potential for rehabilitation amounted to a nonstatutory mitigating factor, which warranted referral of his case to the three-judge panel. Price's argument for referral to the three-judge panel was supported by substantial evidence.

According to the presentence report, Price had never previously been convicted of a crime as an adult and had no history of delinquent behavior as a child. Although his parents divorced when he was only two years old, Price grew up in the stable family setting of his mother's home in California. The family moved to Anchorage in 1975. Price has one older brother, with whom he maintains close ties. At the time of the offense, Price still lived with his mother. According to his mother, Price's

---

**2.** Price was also convicted of burglary for his entry of the Goode residence and of assault with respect to Lenore Goode. Because these cases did not involve a presumptive term, the three-judge panel did not exercise jurisdiction over them, and they were handled by Judge Johnstone. The sentences imposed for these convictions by Judge Johnstone did not require Price to serve any additional period of incarceration. These sentences have not been challenged by the state and are not at issue here.

behavior had never previously been a problem. At the time of sentencing, Price's mother continued to be supportive of her son, and she expressed a desire to help him in any way possible.

Price graduated from high school in June in 1985, only several months prior to his involvement in this case. Despite being diagnosed as having a learning disability, Price had maintained average grades in school. He was particularly enthusiastic about athletics and played on the varsity basketball team. Price was well liked as a student. Upon graduation, Price hoped to obtain additional training in carpentry.

At the time of his arrest, Price was employed as a staff clerk at the Spenard Recreation Center. Pam Holsteen, a youth counselor, characterized him as a very good employee and indicated that he was reliable and responsible. In the year prior to his graduation, Price worked as a courtesy checker at two Anchorage grocery stores, and also held a job as a stocker at the Anchorage School District's science center.

There is nothing in the record to suggest that Price has ever abused alcohol or drugs. Nor is there anything to indicate any history of violent behavior. Prior to sentencing, Price was examined by a psychologist, Dr. James Harper. Dr. Harper found "no evidence that Mr. Price is suffering from an Antisocial Personality Disorder that would set him at odds with society. He does not appear to reject authority, and in fact, is quite conventional in his attitudes and beliefs." According to Dr. Harper, Price shows no signs of being preoccupied with aggression or sexuality. Rather, his principal problem appears to be immaturity and lack of self esteem. These traits are, in particular, manifested in Price's lack of experience and confidence in forming relationships with others, particularly girls.

Dr. Harper concluded that Price was amenable to treatment and that prison would not further Price's rehabilitation. Based on his findings, Dr. Harper recommended a suspended imposition of sentence, coupled with a course of counseling while on probation.

Other evidence presented to Judge Johnstone supported Dr. Harper's recommendation. Eleven members of the community, including the Deputy Chief of Police of the Anchorage Police Department, sent strong letters of support on behalf of Price, attesting to his good character and strong potential for rehabilitation. In addition, both of Price's victims, Teresa and Lenore Goode, testified in his behalf. Both indicated that their wounds had healed completely and that, with the exception of a small scar on Teresa's neck, neither had suffered any lasting effects, either physical or psychological. Neither victim expressed any fear of Price. Both believed that the time Price had spent in jail prior to sentencing was sufficient and that he should not be subjected to further incarceration.

Evelyn Goode, the mother of Teresa and Lenore, expressed similar views. She indicated that she had never previously seen Price display any anger or violence. While she did not believe her daughter Teresa should continue to go out with Price, Evelyn Goode readily confirmed that neither of her daughters would have any fear of him if he were released. Evelyn Goode characterized the presumptive term of seven years as "far too harsh." Goode expressed the belief that Price had already served sufficient time, and she requested that he be released on the condition that he obtain counseling.

The presentence report in effect accepted Dr. Harper's characterization of Price as a basically immature offender who had committed a serious but uncharacteristic act of violence and was amenable to rehabilitation. Although the report itself did not make a specific recommendation with respect to sentencing, at a subsequent hearing before the three-judge panel, the presentence probation officer specifically concurred in the defense counsel's recommendation that Price be given a suspended imposition of sentence with no incarceration beyond the period he had served at that time.

At the sentencing hearing before Judge Johnstone, the state did not seriously dispute the favorable information concerning

Price and did not oppose Price's request for referral to the three-judge panel.

While Judge Johnstone found that Price's conduct was as serious as, or somewhat more serious than, conduct typically involved in first-degree assault, the judge concluded that Price's background was unusually favorable and that his chances for successful rehabilitation were exceptionally good. Based on these considerations, Judge Johnstone found the presence of a nonstatutory mitigating factor and concluded that manifest injustice would result if the factor were not taken into account in sentencing. Accordingly, Judge Johnstone referred the case to the three-judge sentencing panel, stating that, while he would prefer to require some period of incarceration, he believed the presumptive term to be too long and thought that its imposition would thwart Price's rehabilitation.

At the sentencing hearing before the three-judge panel, both parties relied on the record of proceedings before Judge Johnstone. The state conceded the three-judge panel's sentencing jurisdiction, acknowledging that Price's potential for rehabilitation amounted to a nonstatutory mitigating factor and that manifest injustice would result if the nonstatutory factor were not considered. *See* AS 12.55.165–12.55.175. The state argued, however, that because referral to the panel had been based solely on the existence of a nonstatutory mitigating factor, the panel had no jurisdiction to reduce the presumptive term by more than fifty percent—the applicable limitation where the existence of a statutory mitigating factor permits an individual sentencing judge to make a downward adjustment to a seven-year presumptive term. *See* AS 12.55.155(a)(2) (authorizing individual sentencing judges, without referral to the three-judge panel, to decrease presumptive terms of more than four years by up to fifty percent in light of statutory mitigating factors).

The three-judge panel agreed that Price had established a nonstatutory mitigating factor. Rejecting the state's argument, the panel also found that it had jurisdiction to impose a sentence of less than three and

one-half years. After expressly adopting Judge Johnstone's findings, the panel concluded that additional incarceration was not necessary for the purpose of Price's personal deterrence or rehabilitation. Nevertheless, the panel believed that the sentencing goals of community condemnation and general deterrence warranted a period of incarceration in addition to that which Price had already served (at that point, approximately six months). The panel thus suspended the imposition of Price's sentence on condition that he serve one year of imprisonment and complete five years of probation, with mandatory counseling while on probation.

In response to the three-judge panel's sentence, the state initially petitioned this court for review, asserting the jurisdictional argument that it had raised below. The state asked us to find that, under AS 12.55.155(a)(2), the three-judge panel had no authority to reduce a sentence by more than fifty percent where the applicable presumptive term exceeded four years and where the sole basis for referral to the three-judge panel was a nonstatutory mitigating factor. The state insisted that, in such cases, the panel did not obtain jurisdiction to sentence below the fifty percent limit unless it entered an express finding that a sentence of fifty percent of the presumptive term would create manifest injustice.

This court granted the state's petition for Review and rejected its jurisdictional argument, holding that, once it lawfully acquired jurisdiction of the case for sentencing purposes, the three-judge panel had authority under AS 12.55.165 and 12.55.175 to impose a term of less than fifty percent of the applicable presumptive sentence. *See State v. Price*, 730 P.2d 159, 160 (Alaska App.1986). Our decision, however, expressly authorized the state to bring a separate sentence appeal arguing that, even if the three-judge panel had authority to go below the fifty percent limit, it was clearly mistaken in the exercise of its discretion when it did so in the present case. *Id.* at 161. This sentence appeal followed. In it, the state raises the issue previously reserved.

In its primary argument on appeal, the state urges us to fashion a judicial rule similar to the jurisdictional requirement we rejected in deciding the petition for review. Specifically, the state asks us to hold that in cases involving presumptive terms of more than four years, where a referral to the three-judge panel is based exclusively on a nonstatutory mitigating factor, the panel be enjoined from imposing a sentence below fifty percent of the presumptive term without an express finding that such a sentence is necessary to avoid manifest injustice.

We find considerable merit in the state's argument. In *Smith v. State*, 711 P.2d 561 (Alaska App.1985), we held that referral to the three-judge panel is authorized in two situations: first, where imposition of the applicable presumptive term—whether adjusted or not—would result in manifest injustice; and, second, where manifest injustice would result from failure to consider an aggravating or mitigating factor that is not among those specifically enumerated by the legislature in AS 12.55.155(c) and (d). We recognized in *Smith* that these two situations are distinct and require separate consideration.

When the three-judge panel deals exclusively with the second of these situations— namely, with a case in which the only basis for referral is a nonstatutory mitigating factor—its role is for all practical purposes similar to the role of the individual judge who is faced with the task of adjusting a presumptive term in light of statutory mitigating factors. Consideration of the individual sentencing judge's authority thus becomes relevant. Where a statutory mitigating factor has been established and the presumptive term exceeds four years, the individual judge can cause a sentence below fifty percent of the presumptive term to be imposed only by referral to the three-judge panel, based on an express finding that the reduced term is necessary to avoid manifest injustice. *See* AS 12.55.155(a)(2); AS 12.55.165. For its part, the three-judge panel in such cases is precluded from assuming jurisdiction and entering a term below the fifty percent threshold unless and until it expressly concurs in the individual judge's finding that the sentence is necessary to avoid manifest injustice. Because the existence of a nonstatutory mitigating factor effectively puts the panel in the shoes of the individual judge who is dealing with a statutory factor, parity in treatment between statutory and nonstatutory mitigating factors will be achieved only if the panel makes an independent finding of manifest injustice before going under the fifty percent limit.

In our earlier ruling on the state's petition for review, we held that the statutes delineating the three-judge panel's authority did not compel an independent finding of manifest injustice as a prerequisite to the panel's jurisdiction. *State v. Price*, 730 P.2d 159 (Alaska App.1986). The absence of this jurisdictional requirement, however, only underscores the need for the panel to exercise its discretion cautiously and consistently in dealing with nonstatutory mitigating factors. There is seemingly no rational justification for permitting the panel to exercise greater latitude with respect to nonstatutory mitigating factors than it enjoys with respect to statutory factors. There is no principled basis for imbuing nonstatutory mitigating factors with inherently greater weight than statutory factors. In *Smith v. State*, 711 P.2d at 570, we recognized that nonstatutory mitigating factors may warrant referral to the three-judge panel even though they may ultimately justify only a relatively minor adjustment of the presumptive term. Implicit in this observation is our view that nonstatutory factors are not inherently more worthy than their statutory counterparts.

The importance of requiring a consistent approach to the treatment of both statutory and nonstatutory mitigating factors finds root in the policy of uniformity, which is central to Alaska's presumptive sentencing system. In *Juneby v. State*, 641 P.2d 823 (Alaska App.1982), *modified on rehearing*, 665 P.2d 30 (Alaska App.1983), we commented on the significance of uniformity as a sentencing goal, emphasizing the need for a cautious approach toward the adjustment of presumptive terms in light

of aggravating and mitigating factors alike. After describing the narrow and structured provisions of our presumptive sentencing scheme, we said:

> When viewed in light of the fundamental goals of the new sentencing statutes, the rationale for this relatively inflexible sentencing framework is readily understood. If sentencing courts were permitted, under the presumptive sentencing scheme, to deviate routinely and substantially from the presumptive terms prescribed by law, the fundamental purposes of eliminating disparity and establishing reasonable uniformity in sentencing would be completely undermined. Unless the provisions of AS 12.55.155 [governing adjustment of presumptive terms for statutory aggravating and mitigating factors] are adhered to strictly, and unless a measured and restrained approach is taken in the adjustment of presumptive sentences for both aggravating and mitigating factors, then the prospect of attaining the statutory goal of uniform treatment for similarly situated offenders would quickly be eroded, the potential for irrational disparity in sentencing would threaten to become reality, and the revised code's carefully fashioned system of escalating penalties for repeat offenders would be rendered utterly ineffective.

*Juneby v. State*, 641 P.2d at 833.

To allow the three-judge panel to exercise a broader range of discretion in cases of nonstatutory mitigating factors than it exercised in cases of statutory factors, would serve only to promote the consequences against which we warned in *Juneby:* the lack of uniform treatment for similarly situated offenders and the potential for irrational disparity.

■ Thus, for purposes of future cases, we conclude that, when a case involving a presumptive term in excess of four years is referred to the three-judge panel on the sole basis of a nonstatutory mitigating factor, imposition by the panel of a sentence below fifty percent of the presumptive term will normally be deemed inappropriate and clearly mistaken unless the panel expressly concludes that such a sentence is required to avoid manifest injustice.

■ Having adopted this guideline for future cases, we stop short of applying it in the present case. In the course of the proceedings below, the state never requested the three-judge panel to make an independent determination of whether manifest injustice would result from a sentence of three and one-half years' imprisonment—one half the seven-year presumptive term applicable to Price's case. The only argument advanced by the state challenged the panel's jurisdiction to undercut the fifty percent limit—an argument correctly rejected by the panel.

In any event, although the issue is in our view an extremely close one, a finding that the sentence actually imposed was necessary to avoid manifest injustice would not be clearly mistaken under the peculiar circumstances of this case.[3] The evidence pertaining to Price's background and prospects for rehabilitation provides strong support for the sentence imposed by the panel.

Price was convicted for an act that appears to have been wholly uncharacteristic. He was an exceptionally youthful offender: the offense was committed within months of his eighteenth birthday. Price's conduct appears primarily to reflect his lack of maturity. Price's good school record, his active participation in sports, and his steady work history are all indicative of his basically good character, and there is nothing in his background to suggest any propensity toward violence or antisocial conduct.

---

3. Moreover, although it appears from the totality of the sentencing record that the three-judge panel most likely did not separately consider whether a sentence below fifty percent of the presumptive term was necessary to avoid manifest injustice, the record is not entirely unambiguous, and it is at least arguable that the panel did in fact make a separate manifest injustice finding. Thus, in relevant part, Judge Shortell, in making findings on behalf of the panel, indicated that the panel had "made the determination that manifest injustice results from the imposition of the presumptive term *and* failure to consider pertinent factors in support of the rehabilitation of the defendant...." (Emphasis added).

Price's amenability to rehabilitation was addressed by Dr. Harper, whose findings were accepted by both Judge Johnstone and the three-judge panel. These findings are undisputed in the record. Dr. Harper concluded that Price's rehabilitation would not be furthered by any time in jail. Moreover, the record establishes that Price will enjoy the benefit of strong family and community support in his efforts toward rehabilitation. In its remarks before the three-judge panel, the state expressly conceded that Price's potential for successful rehabilitation is excellent. The presentence probation officer who appeared before the three-judge panel specifically concurred with the view expressed by Price's counsel that no additional incarceration was necessary.

While Price's conduct, in and of itself, may be as serious as, or somewhat more serious than, the characteristic conduct for first-degree assault, it is unrealistic to view his conduct in isolation. Price's conviction stemmed from a single episode of impulsive behavior that resulted in no lasting emotional or physical damage to his victims. Both of Price's victims, with the concurrence of their mother, testified that they had no fear of future harm from Price; both believed there was no need for his continued incarceration. The extraordinary confidence Price's victims placed in his capacity for rehabilitation is certainly a factor upon which the three-judge panel could properly rely in determining an appropriate sentence.

In short, this is an unusual case in which the youthfulness of the defendant, his favorable background, and his excellent potential for rehabilitation have combined to convince virtually everyone involved in the sentencing process—including a psychiatrist, the presentence probation officer who dealt with the case, the victims, their mother, and numerous concerned members of the community—that no useful purpose would be served in requiring Price to spend more time in jail than he had already served prior to his sentencing hearing.

Despite these unanimous recommendations, the three-judge panel expressly recognized that the interests of community condemnation and general deterrence required a substantial period of additional imprisonment. The panel accordingly ordered Price to serve a one-year term as a special condition of suspending the imposition of his sentence. While the suspended imposition of sentence will allow the conviction to be removed from Price's record should he successfully complete five years of probation, it also reserves the three-judge panel's authority to impose any sentence up to the statutory maximum term in the event Price's efforts at rehabilitation prove unsuccessful.

The state contends that the one-year term, while possibly adequate for purposes of Price's rehabilitation and individual deterrence, does not sufficiently serve the purposes of community condemnation and general deterrence. Yet there is no reason to suppose that the one-year sentence of imprisonment in this exceptionally mitigated case will fail to deter other potential offenders, or that it unduly depreciates the seriousness of Price's conduct. While this sentence, overall, may be a lenient one, a one-year term of imprisonment is certainly not insubstantial. We cannot lightly presume that other potential offenders, or members of the community at large, will be incapable of perceiving the mitigated nature of this case. Moreover, to the extent that there is any doubt, the principle of parsimony clearly requires that the doubt be resolved in favor of a shorter, rather than a longer, sentence. *See Pears v. State*, 698 P.2d 1198, 1205 (Alaska 1985).

Having independently reviewed the totality of the sentencing record, we conclude that the sentence imposed was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.