Glenn W. BOSSIE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4279.

Court of Appeals of Alaska.

Aug. 21, 1992.

Blair McCune, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Leonard M. Linton, Jr., Asst. Dist. Atty., Edward E. McNally, Dist. Atty., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Glenn W. Bossie was convicted of manslaughter, AS 11.41.120(a)(1), and second-degree assault, AS 11.41.210(a)(2), following a jury trial in the superior court. Bossie, who was intoxicated, crossed the center line of the Glenn Highway south of Palmer and collided with another car. The driver of this car was injured and the passenger was killed. The victims' car left 43 feet of skid marks; Bossie's car left none. Bossie denied having anything to drink. However, three hours after the collision, his blood tested at .18 percent alcohol; expert extrapolation put Bossie's blood level at .225 percent at the time of the accident.

Bossie was a first felony offender; he therefore faced a presumptive term of 5

years' imprisonment for the manslaughter conviction. AS 11.41.120(b) and AS 12.55.-125(c)(1). After Superior Court Judge Karl S. Johnstone had reviewed the pre-sentence materials, he announced to the parties that, even though Bossie had not raised the issue, he believed Bossie might have established the non-statutory mitigating factor of exceptional potential for rehabilitation. The State requested a continuance to prepare to address this court-proposed mitigator.

At the subsequent hearing, Judge Johnstone found that Bossie did have exceptional potential for rehabilitation. Judge Johnstone noted Bossie's lack of a prior criminal record, his good record in the military, his expressions of remorse, his desire to deal with his drinking problem, and the support Bossie was receiving from family and friends. However, Judge Johnstone concluded that, under all the circumstances of Bossie's case, even though Bossie had exceptional potential for rehabilitation, it would not be manifestly unjust to fail to adjust the 5–year presumptive term on account of this non-statutory mitigator. To the contrary, Judge Johnstone declared, any sentence less than the 5–year presumptive term would fail to adequately reflect the sentencing goals of general deterrence and reaffirmation of societal norms. Judge Johnstone therefore declined to refer Bossie's case to the three-judge sentencing panel.

On appeal, Bossie argues that Judge Johnstone misunderstood his duty under AS 12.55.165. The pertinent part of that statute reads:

> If the defendant is subject to [presumptive] sentencing ... and the court finds by clear and convincing evidence that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 ..., the court shall enter findings and conclusions and [refer the case] to [the] three-judge panel for sentencing under AS 12.55.175.

In *Juneby v. State*, 641 P.2d 823, 833, 838 n. 28 (Alaska App.1982), as modified on rehearing, 665 P.2d 30, 31–32 (Alas-

ka App.1983), this court addressed the related issue of how the superior court should proceed when determining whether a presumptive term should be adjusted based on a *statutory* mitigating factor (a factor specified in AS 12.55.155(d)). The sentencing court must first determine whether the defendant has proved the mitigating factor by clear and convincing evidence; if so, the court must then determine whether this mitigating factor, analyzed in light of the sentencing criteria contained in AS 12.55.005 and *State v. Chaney*, 477 P.2d 441 (Alaska 1970), calls for some adjustment of the presumptive term.

In *State v. Price*, 740 P.2d 476, 481–82 (Alaska App.1987), this court held that the three-judge sentencing panel should employ this same analysis when determining whether a sentence should be adjusted on account of a non-statutory mitigating factor. As this court noted in *Price*, "There is no principled basis for imbuing nonstatutory mitigating factors with inherently greater weight than statutory factors." 740 P.2d at 481.

Alaska Statute 12.55.165 requires the superior court to send a defendant's case to the three-judge panel for sentencing when "manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155". *Juneby* and *Price* indicate that this statutory language should be construed to mean that a case should be referred to the three-judge panel when it would be manifestly unjust to fail to adjust the presumptive term based on a non-statutory factor. In fact, this is the construction the court has placed on AS 12.55.165. *Kirby v. State*, 748 P.2d 757, 765 (Alaska App.1987); *Smith v. State*, 711 P.2d 561, 569–570 (Alaska App.1985).

Bossie contends that Judge Johnstone, having found the non-statutory mitigator of exceptional potential for rehabilitation, proceeded simply to decide whether it would be manifestly unjust to impose a 5–year presumptive term on Bossie, rather than deciding the issue framed by the statute: whether it would be manifestly unjust to fail to consider—that is, make some ad-

justment for—the non-statutory mitigating factor when imposing Bossie's sentence. Bossie has misread Judge Johnstone's remarks. Judge Johnstone stated that he interpreted AS 12.55.165 to mean that a case should be referred to the three-judge panel if (1) a non-statutory factor has been proved, and (2) it would be manifestly unjust to fail to adjust the presumptive term by some amount, no matter how small, on account of this non-statutory factor. This is a correct interpretation of the statutory language.

It is true that, during Bossie's sentencing hearing, both Judge Johnstone and Bossie's attorney phrased the statutory test in slightly differing ways. However, Bossie's attorney never indicated any disagreement with Judge Johnstone's phrasing of the test nor did he assert that Judge Johnstone might be misconstruing the test. For example, the following exchange occurred during the prosecutor's sentencing argument:

> THE COURT (addressing the prosecutor): [Y]ou might argue, assuming the court finds a relevant non-statutory mitigating factor—i.e., unusually good prospects for rehabilitation—whether it would be manifestly unjust to impose a presumptive term of 5 years. That's where I thought you were heading.
>
> MR. LINTON [the prosecutor]: Well, I was gonna—one intermediate step, but . . .
>
> THE COURT: Okay.
>
> MR. LINTON: . . . yeah. But since Your Honor is applying it that way, I'll skip the intermediate step.
>
> THE COURT: Do you dispute that application, Mr. Sterling?
>
> MR. STERLING [the defense attorney]: No, [it] sounds to me as though the court is reading directly from the *Smith* case.

Thus, as explained above, it appears that the slight variations in the statement of the test during the course of the sentencing proceedings were inconsequential. Contrary to Bossie's assertion on appeal, Judge Johnstone did not go astray by simply deciding that a 5–year term for Bossie's crime would not be manifestly unjust. Rather, Judge Johnstone declined to send Bossie's case to the three-judge panel because he concluded that *any* sentence less than the 5–year presumptive term would fail to satisfy the *Chaney* criteria of community condemnation and general deterrence (deterrence of others). Since Judge Johnstone found that any reduction of the presumptive term would affirmatively create injustice (by yielding a sentence that would be clearly mistaken under the *Chaney* criteria), it necessarily follows that he believed there was no manifest injustice in failing to adjust the presumptive term for the non-statutory mitigating factor. Judge Johnstone correctly interpreted his statutory duty.

■ Although this court has encouraged sentencing judges to send debatable cases to the three-judge panel, *Lloyd v. State*, 672 P.2d 152, 155 (Alaska App.1983), AS 12.55.165 nonetheless calls upon the sentencing judge to make the initial screening decision. If the sentencing judge declines to send the case to the three-judge panel, that decision is reviewed under the "clearly mistaken" standard. *Lepley v. State*, 807 P.2d 1095, 1099 n. 1 (Alaska App.1991); *Kirby*, 748 P.2d at 765; *Lloyd*, 672 P.2d at 156. The question, then, is whether Judge Johnstone was clearly mistaken when he concluded that the non-statutory mitigator, evaluated together with the other circumstances of the case in light of the *Chaney* sentencing criteria, did not plainly call for some adjustment (no matter how small) of the 5–year presumptive term.

Judge Johnstone declared that the crime of drunk-driving manslaughter merited high societal condemnation. Despite Bossie's excellent background, his remorse, and his current recognition of his drinking problem, Judge Johnstone weighed heavily the facts that Bossie was driving a motor vehicle at 50 miles per hour on a two-lane, undivided road, while his blood alcohol level was over twice the legal limit. Judge Johnstone found this to be a serious offense among all possible vehicular homicides.

Judge Johnstone stated his belief that defendants who commit vehicular man-

slaughter are often good people who, except for that one incident, do not need to be rehabilitated in any significant way. Judge Johnstone continued:

> Mr. Bossie is one of those. But I think the court should recognize, as the legislature surely did, that that's more often the case than not. We have outstanding people who drink and drive, and they get in an accident and kill somebody.... [But] the more serious the felony, and particularly those that cause death, I think the more the court has to look very carefully at the sentencing goal of community condemnation and reaffirmation [of societal values].

After reviewing the record as a whole, including Bossie's favorable background and prospects for rehabilitation weighed against the seriousness of his crime, Judge Johnstone concluded that "the goals of reaffirmation, community condemnation, and general deterrence could not be satisfactorily achieved with less than the imposition of the 5–year presumptive sentence." He therefore declined to refer Bossie's case to the three-judge panel. Judge Johnstone sentenced Bossie to the 5–year presumptive term for the manslaughter of the passenger and a consecutive 2–year term, all suspended, for the second-degree assault on the driver.

On appeal, Bossie takes issue with Judge Johnstone's conclusion that Bossie's exceptional potential for rehabilitation should not be given determinate weight at sentencing because the people who commit drunk-driving manslaughter are often otherwise good and productive members of society. Bossie asserts that Judge Johnstone engaged in unsupported speculation when he concluded that vehicular manslaughter offenders typically exhibit a good potential for rehabilitation. Bossie contends that the case law shows that most drunk-driving manslaughter offenders who receive the kind of sentence Bossie received (5 years to serve) usually have aggravated prior records or long-term alcohol problems.

Prior sentencing decisions do not support Bossie's argument. Instead, it appears that Judge Johnstone's view of the matter was justified. Sentences comparable to Bossie's presumptive 5 years' imprisonment have been upheld in cases where offenders, convicted of manslaughter, otherwise had good or even outstanding records. For example, in *Jones v. State*, 744 P.2d 410 (Alaska App.1987), the defendant was an 18–year–old with no prior record except one speeding ticket. Driving with a blood alcohol level of .15 percent, Jones crossed the center line of a highway, striking two other vehicles, killing two people and permanently injuring a third. The superior court sentenced Jones to serve 10 years. This court, in a two-to-one decision with no majority opinion, reduced Jones's sentence to 8 years to serve—still three more years than Bossie received.

In *Connolly v. State*, 758 P.2d 633 (Alaska App.1988), the defendant, who was driving with a blood alcohol level of .20 percent, struck and killed a pedestrian who had just gotten off a bus. Connolly was a first offender with an excellent prior history and not even traffic offense convictions. It appears that Connolly's drinking was due to situational stress. He had started drinking when, after being laid off work, he had then begun having marital difficulties. His divorce had become final on the day of the crime. The State conceded that Connolly had proved the statutory mitigator of "least serious conduct". This court nevertheless affirmed a sentence of 7½ years with 3½ suspended (4 years to serve).

Similarly, in *Dresnek v. State*, 697 P.2d 1059 (Alaska App.1985), the defendant was driving while intoxicated. Dresnek, whose blood alcohol level was .12 percent two hours after the accident, ran a stop sign at 40 miles per hour, killing one person and injuring two more. He had a good work record, no prior criminal convictions, and only a minor traffic record. Nevertheless, this court upheld a sentence of 8 years with 3 years suspended (5 years to serve).

In *Clemans v. State*, 680 P.2d 1179 (Alaska App.1984), the defendant spent the afternoon drinking in celebration of his birthday; he then started driving home, intoxicated. Clemans lost control of his

vehicle and struck and killed two children who were walking along the highway. His blood alcohol at the time was between .20 and .23 percent.

Clemans was 31 years old and he had no prior criminal convictions, although he had been convicted of five minor traffic offenses. He received an extremely favorable pre-sentence evaluation: he had a good employment history, he regularly made substantial child support payments, he had no alcohol or drug abuse problem, and he had no other significant emotional or psychological disorders. Moreover, Clemans suffered considerable grief and remorse over his killing of the two children; he had completely stopped drinking, and he was genuinely motivated to help other potential drunk drivers avoid becoming involved in similar crimes. The sentencing judge declared that he believed Clemans did not need further rehabilitation or personal deterrence.

Nevertheless, to satisfy the *Chaney* criteria of community condemnation and general deterrence, the superior court sentenced Clemans to serve 6 years, with another 2 years suspended. This court upheld this sentence on appeal:

> Both the supreme court and this court have consistently underscored the seriousness of homicides committed by drunken drivers. In such cases, we have repeatedly held that deterrence of others and reaffirmation of societal norms should be given a prominent role in sentencing. [citations omitted]
>
> This case is unusual because of Clemans' favorable background, the responsible manner in which he reacted to his offense, and his willingness and ability to perform valuable community service. As Clemans points out, no other appellate decision has approved a sentence as lengthy as his in the absence of a prior record of drunken driving offenses or other comparable aggravating factors.
>
> However, no other appellate decision has held a comparable sentence to be excessive for an offense of this magnitude. The maximum penalty for manslaughter is twenty years, and ... Cle-

mans would have been subject to a presumptive term of ten years if he had previously been convicted of one felony. The sentence Clemans received is thus well below the presumptive sentence for a second offender in his class. *See Austin v. State*, 627 .P.2d 657, 658 (Alaska App.1981)....

> Furthermore, it cannot fairly be said that this offense involves marginal conduct, either in terms of intoxication or recklessness. At the time of the offense, Clemans was severely intoxicated and obviously impaired....
>
> Through criminal sentencing, Alaska's courts must decisively and unequivocally express society's disapproval of the needless killing of innocent victims by the reckless acts of drunken drivers. Neither an offender's favorable background nor his willingness to accept responsibility after the fact provides just cause to disregard the tragic seriousness of such crimes. If the criminal justice system is to reduce the alarming frequency of drunken driving manslaughters, clear and consistent notice must be served that the conduct involved in such cases will not be tolerated by the law.... Both as an expression of community condemnation and as a deterrent to other potential offenders, the sentence imposed ... was not clearly mistaken.

*Clemans*, 680 P.2d at 1189–1190.

■ Sentence review is not designed to impose absolute sentencing uniformity. The responsibility of evaluating the priority of the *Chaney* sentencing criteria in a particular case rests with the sentencing judge. *Asitonia v. State*, 508 P.2d 1023 (Alaska 1973); *State v. Chaney*, 477 P.2d at 441. Our review of the sentencing judge's decision is conducted under the "clearly mistaken" standard established in *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

■ Judge Johnstone concluded that adjustment of the 5–year presumptive term to take account of the non-statutory mitigator was not required to prevent manifest injustice. Based upon the record in Bossie's case, and in light of the judicially recog-

nized importance of the goals of community condemnation and deterrence of others in vehicular manslaughter cases, this conclusion was not clearly mistaken. We therefore uphold Judge Johnstone's decision not to send Bossie's case to the three-judge sentencing panel and his imposition of the 5–year presumptive term of imprisonment.

The judgement of the superior court is AFFIRMED.