NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter.  Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*
*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections @ akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA


ERIC L. SMITH,

                              Appellant,

                v.

STATE OF ALASKA,

                              Appellee.

Court of Appeals No. A-11390
Trial Court No. 4FA-10-2580 CR


O P I N I O N


No. 2455 — May 29, 2015


Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Randy M. Olsen, Judge.

Appearances:  Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.  Sara E. Simpson, Assistant District Attorney, Fairbanks, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before:  Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge ALLARD.

Eric L. Smith pleaded guilty to twelve counts of possessing child pornography after an investigation by the Alaska State Troopers discovered pornographic images of children on his laptop computer.  Smith was sentenced to a

---

[*]    Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

composite sentence of 46 months of active imprisonment, 10 years of supervised probation, and 72 years of suspended imprisonment.

On appeal, Smith argues that the 72 years of suspended time and the 10 years of probation are excessive. Smith also challenges a number of his probation conditions as unconstitutionally vague, overly broad, or lacking a sufficient nexus to his convictions.

For the reasons explained here, we conclude that the superior court's imposition of a 10-year probationary term was not clearly mistaken. We also affirm the court's imposition of probation conditions restricting Smith's consumption of and access to alcohol.

However, we vacate the 72 years of suspended jail time as clearly mistaken and direct the superior court on remand to impose a term of suspended time more appropriate to the individualized circumstances of Smith's case. We also vacate a number of the challenged probation conditions. On remand, the court may choose to impose modified versions of some of these conditions consistent with the guidance provided here.

*Facts and proceedings*

In the course of an online investigation, the Alaska State Troopers discovered that Eric Smith, a twenty-one-year-old soldier stationed at Fort Wainwright, was downloading child pornography from the Internet. Trooper David Willson obtained a search warrant for Smith's computer and, during the execution of the search warrant, Smith admitted to possessing child pornography. A forensic examination of Smith's computer identified over thirty still and moving images of child pornography, as well as files containing jokes about pedophilia.

Smith was charged with twelve counts of possessing child pornography, and he entered guilty pleas to all twelve counts without a plea agreement.[1]

At Smith's sentencing hearing, Trooper Willson testified that Smith admitted that he "kept getting sucked into" downloading child pornography, beginning when he was fourteen years old. In his allocution, Smith said he felt compelled to look at child pornography because of experiences in his childhood and in Iraq — he and a cousin had touched each other's genitals when they were about seven years old, he had looked at child pornography with a friend the summer between sixth and seventh grade, and he had seen an Iraqi man rape a young boy while on patrol during military deployment to Iraq. Smith said he viewed child pornography as a way to punish himself. He admitted that he drank alcohol whenever he looked at pornography.

Smith told the court that he accepted responsibility for what he had done, that he was ashamed, and that he wanted and needed treatment. Smith also told the court that he had already undergone assessment for sex-offender treatment and found the process helpful.

Smith submitted the sex-offender risk assessment, which was prepared by a licensed social worker, Moreen Fried, to the prosecution and the court. In the assessment, Fried indicated that Smith had actively participated in the assessment process and appeared amenable to sex-offender treatment and community supervision.

Smith's presentence report noted that Smith had no prior juvenile or adult criminal history. The report concluded, however, that Smith had "a high level of sexual deviancy" that put him at "high risk" of re-offending if he did not receive treatment.

---

[1] *See* AS 11.61.127(a).

As a first felony offender, Smith faced a presumptive range of 2 to 12 years on each of the twelve convictions.[2] The judge was also required to impose at least two years of suspended time on each conviction as well as a probationary term of at least 5 years.[3] Under former AS 12.55.127, the judge had the discretion to impose the individual sentences on each conviction concurrently, consecutively, or partially consecutively.[4]

At the sentencing hearing, Smith's attorney requested that the court impose the lowest sentence permissible within the applicable presumptive sentencing range — 4 years with 2 years suspended on each count, to be run concurrently, for a total composite sentence of 2 years of active jail time to serve and an additional 2 years of suspended jail time — *i.e.*, 2 years of suspended jail time that could be imposed later if Smith violated any of the terms of his probation. Smith's attorney also requested that the court impose the minimum 5 years of probation.

The prosecutor requested that the court impose 8 years with 3 years suspended on each count and that 3 months of the active imprisonment on each count and all of the suspended time on each count be run consecutively, for a composite sentence of 7 years 9 months of active jail time to serve and 36 years of suspended jail time. The prosecutor requested that Smith serve a 10-year probationary term.

Superior Court Judge Randy M. Olsen sentenced Smith. In his sentencing remarks, Judge Olsen indicated that his primary goal in fashioning Smith's sentence was to send a message to others that possessing child pornography would not be treated

---

[2]  *See* AS 12.55.125(i)(4)(A).

[3]  *See* AS 12.55.125(o).

[4]  *See* former AS 12.55.127(b) (2012). In 2013 the Alaska legislature amended AS 12-.55.127 to require partially consecutive terms of active imprisonment for each additional conviction for possession of child pornography. *See* ch. 43, § 21, SLA 2013.

leniently. The judge found that the images on Smith's computer were "reprehensible" and that Smith was "heavily involved" in child pornography and needed "a whole lot of professional help ... to stop."

The judge also concluded, however, that "throwing [Smith] in jail and throwing away the key would not accomplish any more than several years in jail." He noted that Smith was young and had admitted responsibility for his crimes and pleaded guilty without any promises or a plea agreement. The judge also found that Smith appeared genuinely interested in getting treatment, noting that "maybe the best thing for [Smith] was to be caught" because now he could "get the help that he needs."

Judge Olsen ultimately sentenced Smith to 8 years with 6 years suspended on each count and 10 years of probation. The judge imposed 2 months of the active term of imprisonment on each count consecutively, with the rest of the active time to run concurrently, for a total active term of imprisonment of 46 months(3 years and 10 months) to serve. The judge also imposed all 6 years of suspended time on each count consecutively, for a total suspended term of 72 years.

In explaining his decision to impose 72 years of suspended time, Judge Olsen commented that a lengthy suspended sentence would ensure that Smith would serve "many years in jail" if he failed at the rehabilitation opportunities made available to him. Judge Olsen also stated that the primary goal of deterring others would be met if the sentence was "broadcast somehow over the [I]nternet or to the rest of the community[.]"

This appeal followed.

*Why we conclude that the suspended portion of Smith's sentence is excessive*

We review a criminal sentence for excessiveness under the "clearly mistaken" standard of review.[5] This is a deferential standard of review that requires the appellate court to conduct an independent review of the sentencing record but also gives considerable leeway to individual sentencing judges.[6] As the supreme court has noted, the clearly mistaken test is founded on two concepts: "first, that reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; ... second, that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls within 'a permissible range of reasonable sentences.'"[7]

When we review a sentence for excessiveness, we consider the sentence in its entirety, including all suspended time — although the suspended portion of the sentence is typically weighed less heavily because it is not as harsh as time to serve.[8]

In past cases, we have upheld substantial terms of suspended time, although none as substantial as the 72-year suspended term imposed here.[9] Those cases have

---

[5] *McClain v. State*, 519 P.2d 811, 813 (Alaska 1974); *see Erickson v. State*, 950 P.2d 580, 586 (Alaska App.1997) (quoting *State v. Wentz*, 805 P.2d 962, 965 (Alaska 1991)).

[6] *See Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973); *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970); *Bossie v. State*, 835 P.2d 1257, 1261 (Alaska App. 1992).

[7] *State v. Korkow*, 314 P.3d 560, 562 (Alaska 2013) (quoting *McClain*, 519 P.2d at 813) (internal quotation marks omitted).

[8] *Heavyrunner v. State*, 172 P.3d 819, 821 (Alaska App. 2007); *Jimmy v. State*, 689 P.2d 504, 505 (Alaska App. 1984); *see also Karr v. State*, 686 P.2d 1192, 1194 (Alaska 1984); *Leuch v. State*, 633 P.2d 1006, 1010 (Alaska 1981); *Andrews v. State*, 552 P.2d 150, 154 n.11(Alaska 1976).

[9] *See, e.g.*, *Heavyrunner*, 172 P.3d at 821 (27 years suspended and 8 years to serve);
(continued...)

involved findings by the sentencing court that the defendant's conduct was especially serious, that the defendant was particularly dangerous, or that the defendant had distinctly poor prospects for rehabilitation.[10]

Here, in contrast, the sentencing court found that Smith's conduct was "extremely typical" for this type of offense. The court also found reasons to be cautiously optimistic about Smith's potential for rehabilitation. The court commented that "a lengthy suspended sentence" would act as an incentive for Smith and would ensure that he served "many years in jail" if he failed at the opportunities for rehabilitation made available to him. But the court did not find — nor does the sentencing record otherwise show — that 72 years of suspended time was the appropriate period of time needed to motivate Smith or to protect the public if Smith were to violate any of the terms of his probation. Instead, the record demonstrates that the court's primary purpose in imposing 72 years of suspended time was to deter others by "broadcast[ing] over the [I]nternet" the heavy penalty for possessing child pornography.

Deterrence of others and community condemnation are appropriate sentencing goals that courts must consider in every case.[11] But the importance of these goals in an individual case must be determined in relationship to the specific facts of that particular case and assessed within the context already provided by the presumptive

---

[9]  (...continued)
*Reandeau v. State*, 2014 WL 1779312, at *2 (Alaska App. Apr. 30, 2014) (unpublished) (25 years suspended and 27 ½ years to serve); *see generally Williams v. State*, 859 P.2d 720, 723 (Alaska App. 1993) (noting that the primary purpose of suspended time is "to serve as a deterrent in the event that [a defendant's] efforts toward rehabilitation prove[] unsuccessful").

[10]  *See, e.g.*, *Heavyrunner*, 172 P.3d at 821 (defendant "extremely dangerous" and rehabilitative prospects "not good"); *Reandeau*, 2014 WL 1779312 at *2 (defendant had a serious prior sexual felony).

[11]  AS 12.55.005.

ranges for that offense. As we have previously declared, "any sentencing decision must ultimately be justified on the particular facts of a defendant's offense and background, evaluated in light of the sentencing criteria codified in AS 12.55.005 and the range of sentences authorized by the legislature."[12] Here, however, the sentencing judge made no findings to justify such a lengthy suspended term based on the individual circumstances of Smith's case.

We recognize that the judge may have intended the 72 years of suspended time to serve a primarily symbolic role in Smith's sentence. We also recognize that, depending on how he performs on probation, Smith may never serve any of this time, or he may serve only a small portion of it. But although suspended time is weighed less heavily than active jail time partly for that reason, it still remains a significant part of a defendant's sentence with real-life consequences and still requires individualized consideration and scrutiny.

We note that, under our caselaw, probation is a contract that a defendant is entitled to refuse and to "insist upon a normal sentence."[13] It is implicit in this commonlaw rule that a correspondence must exist — although not necessarily a precise one[14] — between the length of a suspended sentence and the nature of the particular offender and offense. That correspondence is lacking in this case. We think it beyond dispute that if Smith were permitted to reject probation in this case,[15] the sentencing

---

[12]  *Phelps v. State*, 236 P.3d 381, 382 (Alaska App. 2010).

[13]  *State v. Auliye*, 57 P.3d 711, 717 (Alaska App. 2002).

[14]  *See State v. Henry*, 240 P.3d 846, 848-49 (Alaska App. 2008) (if a defendant rejects probation, "the sentencing judge must not automatically sentence the defendant to all of the remaining suspended jail time; rather the sentencing judge must apply the *Chaney* sentencing criteria to determine an appropriate term of imprisonment").

[15]  Whether AS 12.55.125(o) prevents a defendant convicted of a sex offense from

(continued...)

record would not justify the imposition of a term of incarceration more than eighteen times Smith's active term of imprisonment.

We therefore conclude that the 72 years of suspended time is clearly mistaken and outside the permissible range of reasonable sentences for this case. Accordingly, we vacate this portion of Smith's sentence and remand his case to the superior court for imposition of a suspended sentence more consonant with the individualized circumstances of Smith's case.

*Why we conclude that 10 years of probation is not clearly mistaken*

Smith also argues that the 10 years of probation imposed by the sentencing court was clearly mistaken, pointing out that it is double the 5-year minimum probation term required by Alaska statute.[16] Smith argues that the 10-year probationary term is excessive because it is unnecessary to achieve the sentencing goals in his case.

We conclude that the imposition of a 10-year probationary term was not clearly mistaken in this case.[17] At Smith's sentencing, the court found that Smith was "addicted[,] heavily involved" with child pornography, and that he needed "a whole lot of professional help." The presentence report similarly commented on Smith's "serious compulsion" to view child pornography and the "high level of sexual deviancy" exhibited by his possession of pornography involving very young children. And Smith himself admitted that he "kept getting sucked into" viewing child pornography, beginning when he was a young teen.

_____

[15] (...continued)
rejecting probation is an issue currently pending before this Court.

[16] *See* AS 12.55.125(o).

[17] *See McClain v. State*, 519 P.2d 811, 813 (Alaska 1974).

The court concluded, based on this record, that a lengthy period of probation was necessary to ensure Smith's rehabilitation and to protect the public from his compulsive criminal behavior. We find this conclusion well-supported by the record and not clearly mistaken.[18]

### Why we uphold Smith's probation conditions related to alcohol

A sentencing judge has broad authority to fashion conditions of probation, but under *Roman v. State*, these conditions must be "reasonably related to the rehabilitation of the offender and the protection of the public and must not be unduly restrictive of liberty."[19]

On appeal, Smith challenges the conditions of his probation that prohibit him from possessing or consuming alcohol or entering facilities where alcohol is served, and that subject him to searches for alcohol.[20] He argues that the sentencing court did not make the findings necessary to justify these conditions under *Roman*.

We find no merit to this claim. At the sentencing hearing, Smith admitted he always drank alcohol when he viewed pornography. And when Smith was asked during his sex-offender assessment what conditions of probation supervision would be

---

[18] *Id.*

[19] *Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977); *see Dawson v. State*, 894 P.2d 672, 680 (Alaska App. 1995); *Thomas v. State*, 710 P.2d 1017, 1019 (Alaska App. 1985).

[20] *See* General Condition No. 9 (prohibiting consumption of intoxicating liquor); Special Condition No. 15 (prohibiting consumption or possession of alcohol or illegal substances and requiring Smith to inform his probation officer of any prescribed medications); Special Condition No. 16 (prohibiting Smith from entering bars or other establishments whose primary function is to serve alcohol or illegal substances); Special Condition No. 17 (requiring Smith to submit to a chemical test for alcohol or drugs at the request of his probation officer, a law enforcement officer, or treatment provider); Special Conditions Nos. 12 and 18 (requiring in part that Smith submit to searches of his person, property, residence, and vehicle for alcohol and drugs).

appropriate in his case, he stated, "no drinking, no frequenting bars and no computer access." Based on this record, the sentencing court could reasonably find that limiting Smith's access to alcohol was reasonably related to his rehabilitation and protection of the public. We therefore affirm the alcohol-related provisions in General Condition No. 9 and Special Condition Nos. 12, 15, 16, 17, and 18.

### Why we vacate the other probation conditions Smith challenges

#### (1) The illegal drugs conditions

Smith challenges the conditions of his probation requiring him to submit to chemical tests for drugs and to searches for drugs and drug paraphernalia. The State concedes that the sentencing record fails to establish that Smith has a history of drug use or that any nexus exists between drug use and Smith's offenses. Having reviewed the sentencing record, we find the State's concessions well-founded.[21] We accordingly vacate the requirement in Special Condition No. 17 that Smith submit to chemical tests for illegal drugs and the requirement in Special Condition Nos. 12 and 18 that Smith submit to searches for illegal drugs and drug paraphernalia.

#### (2) The "sexually explicit material" conditions

The sentencing court imposed several conditions of probation prohibiting Smith from possessing "sexually explicit material" and requiring him to submit to

---

[21] *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (an appellate court must independently evaluate any concession of error by the State in a criminal case).

searches for such material.[22] Smith argues that these conditions are impermissibly vague and overbroad.

The State concedes that these conditions are invalid under our decision in *Diorec v. State*.[23] In *Diorec*, the defendant was convicted of sexual exploitation of a minor for surreptitiously filming his stepdaughter in her bedroom.[24] The sentencing court imposed a condition of probation prohibiting Diorec from possessing "sexually explicit material" including "pornography."[25] We agreed with the superior court that this condition was generally related to Diorec's offense and to the sentencing goals of rehabilitation and protection of the public.[26] But we agreed with Diorec that, without further definition of what materials were encompassed within the meaning of the terms "sexually explicit material" and "pornography," the condition provided constitutionally inadequate notice of what conduct was prohibited.[27]

The same is true here. We therefore vacate Special Condition No. 9 and the provisions in Special Condition Nos. 12 and 18 requiring Smith to submit to searches for such material.

---

[22] *See* Special Condition No. 9 (restricting possession of sexually explicit material without prior written permission of the probation office and sex-offender-treatment provider, "including but not limited to: books, movies, videos, magazines, printed matter, computer disks or files, any encryption devices or computer mechanisms or other electronic devices that can hold this type of visual or audio material..."); Special Condition Nos. 12 and 18 (requiring the probationer to submit to searches for such sexually explicit material).

[23] 295 P.3d 409 (Alaska App. 2013).

[24] *Id.* at 411.

[25] *Id.* at 416.

[26] *Id.*

[27] *Id.* at 417; *see Johnston v. State*, 2013 WL 4780812, at *3 (Alaska App. Sept. 4, 2013) (unpublished).

The sentencing court may revise these conditions on remand. Because probation conditions limiting Smith's access to sexually explicit material will potentially infringe his First Amendment rights, the court must apply special scrutiny to the conditions and "affirmatively consider and have good reason for rejecting any less restrictive alternatives which might be available."[28]

### (3) The "stimulus" conditions

Special Probation Condition No. 10 prohibits Smith from possessing any material that "acts as a stimulus for his abusive cycle" or that "acts as a stimulus to arouse him in an abusive fashion." Smith argues that this condition is also impermissibly vague and overbroad.

We recently vacated an identical probation condition in *Whiting v. State* because the condition did not adequately define what materials "act as a stimulus" to the probationer's "abusive cycle" or arouse the probationer in an "abusive fashion."[29] As we explained in *Whiting*, a condition that prohibits a probationer from possessing material that "acts as a stimulus" must be based on the sentencing record and must identify particular types of materials that have acted as a "stimulus" for the defendant's criminal conduct in the past or are likely to do so in the future.[30]

As the State concedes, Special Condition No. 10 suffers from the same deficiencies we identified in *Whiting*. We accordingly vacate the condition. On remand, the court shall consider more specific alternatives that are supported by the record. To

---

[28] *Johnston*, 2013 WL 4780812, at *2; *see Peratrovich v. State*, 903 P.2d 1071, 1079 (Alaska App. 1995) (probation conditions that restrict constitutional rights may only be imposed after trial court "affirmatively consider[s] and [has] good reason for rejecting lesser restrictions...").

[29] *Whiting v. State*, 2014 WL 706268, at *2 (Alaska App. Feb. 19, 2014) (unpublished).

[30] *Id.*

the extent those alternatives potentially infringe Smith's First Amendment rights, the court must apply special scrutiny and adopt less restrictive alternatives if they are available.[31]

### (4) The "significant relationship" or "closely affiliated" condition

Special Condition No. 25 requires Smith, after consulting with his treatment provider and probation officer, to "inform all persons with whom he has a significant relationship, or with whom he is closely affiliated, of [his] sex offending history." Smith argues that this condition is unconstitutionally vague.

In *Whiting* we vacated an identical probation condition, concluding that the terms "significant relationship" and "closely affiliated" provided constitutionally inadequate notice of when an association with another person becomes sufficiently "close" or "significant" that a probationer will be subject to prosecution for failing to disclose his criminal history to the person.[32] We also noted that, because social relationships are not static, the condition might require a probationer to repeatedly consult with his treatment provider and probation officer to ensure he is not violating it.[33]

We conclude, as the State concedes, that our reasoning in *Whiting* applies equally here. We therefore vacate Special Condition No. 25. The court may reimpose this condition on remand with additional clarification of the terms "closely affiliated" and "significant relationship."

---

[31] *Johnston*, 2013 WL 4780812, at *2; *see Peratrovich*, 903 P.2d at 1079.

[32] *Whiting*, 2014 WL 706268, at *2-3.

[33] *Id.* at *3.

*(5) The limitation on driving privileges*

Special Condition No. 11 requires Smith to "observe limitations on driving privileges as established by his probation officer." Smith argues that this condition is unduly restrictive of his liberty and not reasonably related to his rehabilitation.

As the State concedes, nothing in the sentencing record suggests that Smith's criminal conduct involved driving or that his rehabilitation would be advanced by limitations on his driving privileges. We therefore agree with Smith that this condition is not reasonably related to his rehabilitation or to protection of the public. Accordingly, we vacate Special Condition No. 11.

*Conclusion*

We AFFIRM Smith's 10-year probation sentence and the alcohol-related provisions in General Condition No. 9 and Special Condition Nos. 12, 15, 16, 17, and 18. We VACATE the drug-related provisions in Special Condition Nos. 12, 17, and 18. We also VACATE Special Condition No. 11. We VACATE and REMAND for proceedings consistent with this opinion Smith's 72-year suspended sentence, Special Condition Nos. 9, 10, and 25, and those portions of Special Condition Nos. 12 and 18 that relate to sexually explicit material.