**Amos CRAUTHERS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1507.**

Court of Appeals of Alaska.

Oct. 31, 1986.

Carol A. Brenckle, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nathan A. Callahan, Asst. Dist. Atty., Thomas M. Wardell, Dist. Atty., Kenai, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, JJ., and STEWART, District Judge.*

STEWART, District Judge.

Amos Crauthers entered a plea of no contest to the charge of driving while intoxicated, AS 28.35.030. He preserved his right to appeal the trial court's denial of his motion to suppress the fruits of what he alleged was an improper investigatory stop, *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974).

At the hearing on Crauther's motion to suppress, Trooper Miller testified that he was on routine patrol in the early morning hours of December 24, 1985, in a marked Alaska State Trooper vehicle. At approximately 1:00 a.m., Miller was approaching

---

* Sitting by assignment made pursuant to article    IV, section 16 of the Constitution of Alaska.

an intersection in a lane which would require him to turn left, after making a complete stop at a stop sign. About one-and-one-half car lengths ahead of Miller's vehicle, in the far right lane, was a black Ford. The far right lane was "right turn only," and there was a yield sign at the intersection which applied to traffic in this lane.

According to Miller, the black Ford came to a stop twenty-five to thirty feet in front of the yield sign and the driver rolled down his window. Miller took this as an attempt to get his attention and pulled in behind the Ford. Miller testified, "I was going to stop and see what the problem was. It looked to me like he either needed directions or he needed help." As a safety precaution, Miller turned on his overhead flashing lights at this point. The Ford, driven by Crauthers, pulled past the yield sign, around the corner, and into a parking lot. Miller followed, and during the subsequent contact, Miller observed signs of intoxication and ultimately arrested Crauthers.

Crauthers testified that he thought his boss was in the vehicle behind him, because they had separated only a few minutes earlier. Crauthers wanted to ask some work-related questions, so he slowed down to about eight to ten miles per hour and rolled down his window. As soon as Miller activated the flashing lights, Crauthers pulled around the corner and into the parking lot. Crauthers stated that he believed he had a legal duty to pull over. On cross-examination, Crauthers testified that rolling down the window was an attempt to attract the attention of his boss. A passenger in Crauthers' vehicle also testified that Crauthers never stopped the vehicle.

After the initial contact, Trooper Miller made a recording of much of the conversation occurring in the course of the investigation. The tape was admitted into evidence. Statements made on the tape generally supported the testimony of Crauthers and his passenger. For example, Crauthers stated, "The only reason I slowed down ... I thought my boss was behind me, he was at the bar with me up at Joe's, I thought he wanted to talk to me." Miller stated, "That's the reason I stopped you, I wasn't really sure what you wanted me to do ... you rolled down your window and I didn't know if you wanted me to pass you up or what you were doing there." Crauthers also stated that he did not see the overhead lights until they were turned on.

In denying Crauthers' motion, Magistrate Brigitte McBride found that it was possible to conclude that the car slowed to an extremely low rate of speed rather than stopping, however, she also stated:

> Nothing in Trooper Miller's testimony has given me any idea that Trooper Miller was out there to make an investigatory stop to investigate a crime or in particular the crime of driving while intoxicated. I am fully convinced from the testimony that Trooper Miller came to a public assistance stop.

The court noted that Crauthers was "trying to contact somebody else," and also that turning on the overhead lights seemed an entirely reasonable precautionary measure, given that the two cars were in a traffic lane.

As the United States Supreme Court noted in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714 (1973):

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investiga-

tion, or acquisition of evidence relating to the violation of a criminal statute.

*See also South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Chisholm,* 39 Wash.App. 864, 696 P.2d 41 (1985); *State v. Goetaski,* 209 N.J.Super. 362, 507 A.2d 751 (A.D. 1986); *compare U.S. v. Dunbar,* 470 F.Supp. 704 (D.C.Conn.1979), *aff'd.,* 610 F.2d 807 (2d Cir.1979).

We hold that Trooper Miller's action in engaging his emergency lights and contacting the defendant, following what he reasonably interpreted to be a request for assistance from the Crauthers vehicle, to be permissible under the 4th Amendment as well as Article 1 § 14 of the Alaska Constitution. When a police officer observes facts and circumstances which he actually and reasonably concludes to be a request for contact or assistance, the officer is justified in making that contact. That contact would not be analyzed as an investigatory stop requiring articulable suspicion. *See Howard v. State,* 664 P.2d 603 (Alaska App.1983). Obviously, the prosecution has the burden of convincing the trial court that the contact was justified. Furthermore, if the issue is raised, the prosecution must prove that the action of the police was not a subterfuge to initiate contact.

AFFIRMED.