**Roseanne F. OZHUWAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2547.**

Court of Appeals of Alaska.

Feb. 9, 1990.

---

Kevin F. McCoy, Asst. Public Defender, Kenai, and John B. Salemi, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

### OPINION

BRYNER, Chief Judge.

Roseanne F. Ozhuwan pled no contest to one count of misconduct involving a controlled substance in the fourth degree (possession of cocaine), preserving her right to appeal the denial of a motion to suppress the fruits of an illegal stop. We conclude that the superior court erred in denying Ozhuwan's motion to suppress; accordingly, we reverse.

On the night of October 14, 1987, Soldotna Police Officer Douglas J. Pickerel saw two cars parked near the boat launch in the Swiftwater Campground. The cars were positioned driver's door to driver's door, and their lights were out. Although the cars were parked legally, Pickerel became suspicious. Pickerel was aware that the Swiftwater Campground was frequently used by minors as a place to consume alcohol. He suspected that the occupants of the car might be minors. Pickerel was also concerned that the occupants of the car might need assistance.

Acting on these concerns, Pickerel drove his patrol car to within approximately ten yards of the parked cars. He positioned his patrol car between the cars and the exit to the boat launch area. As Pickerel stopped his patrol car, he turned on its high-beam headlights and activated its overhead red light. Pickerel then got out of his car, walked up to the passenger side of Ozhuwan's car, and shined his flashlight through the window. As he did só, he saw Ozhuwan grab something off the seat. Pickerel told her to drop the object. When Ozhuwan complied, Pickerel spotted what appeared to be a slip of cocaine. He seized the slip and arrested Ozhuwan.

Ozhuwan subsequently moved to suppress the cocaine, alleging that she had been subjected to an unlawful investigative stop. Superior Court Judge Charles K. Cranston denied Ozhuwan's motion, finding that Pickerel's encounter with Ozhuwan was a voluntary contact between a police officer and a citizen and did not amount to an investigative stop. On appeal, Ozhuwan challenges Judge Cranston's finding, arguing, as she did below, that Pickerel's actions amounted to an investigative stop. She further contends that the stop was not supported by a reasonable suspicion of criminal activity.

■ We turn first to the issue of whether a stop occurred. As Judge Cranston correctly recognized, not all encounters between the police and private citizens are investigative stops amounting to seizures for fourth amendment purposes. *Waring v. State,* 670 P.2d 357, 363 (Alaska 1983). In rejecting Ozhuwan's claim that a stop had occurred, Judge Cranston found it determinative that Pickerel had "exerted no overt control over [Ozhuwan] such as ordering her to move or ... stay put."

■ However, the question of whether an investigative stop occurred does not hinge on the existence of some specific act of "overt control." Rather, under the standard adopted by the Alaska Supreme Court, the totality of the circumstances must be considered in each case, and seizure must be found when the challenged police conduct would lead a reasonable person to believe that the person was not free to leave. *Waring,* 670 P.2d at 364; *Romo v. Anchorage,* 697 P.2d 1065, 1068 (Alaska App.1985).

■ In our view, a reasonable person lawfully parked in a public area at night would hardly feel free to leave when suddenly confronted—as Ozhuwan was—by a police patrol vehicle partially blocking the only exit to the area, with its high-beam lights on and its overhead red lights activated. Indeed, it appears to us that in the eyes of a reasonable person, the police conduct in the present case would be virtually tantamount to an overt command to "stay put."

In urging this court to find that no stop occurred, the state argues that, given Ozhuwan's location in an unlighted area at night, Pickerel could reasonably have believed it necessary for him to activate his overhead lights as a means of identifying

himself as a police officer. Although there appears to be at least some support for the state's argument, *see State v. Greer,* 93 Or.App. 409, 763 P.2d 158, 159 n. 1 (1988), we do not find it persuasive. The record in the present case does not establish that Pickerel had no way of identifying himself short of activating his overhead red lights—the traditional hallmark of a traffic stop. Moreover, even if no less intrusive means of identifying himself were available to Pickerel, that fact would not justify his conduct, absent reasonable suspicion. The applicable standard for determining when a stop occurs hinges on the objective perceptions of a reasonable person, not on the police officer's personal motivation. Regardless of Pickerel's reasons for activating the overhead light of his vehicle and partially blocking Ozhuwan's exit from the boat launch, a reasonable person in Ozhuwan's shoes would almost certainly have perceived Pickerel's actions as an official directive not to leave the scene.

Appellate courts in other jurisdictions have not hesitated to find that an officer's use of overhead lights amounts to a seizure under circumstances similar to those of the present case. *See, e.g., People v. Hunt,* 188 Ill.App.3d 359, 135 Ill.Dec. 761, 544 N.E.2d 118 (1989); *State v. Walp,* 65 Or. App. 781, 672 P.2d 374 (1983); *State v. DeArman,* 54 Wash.App. 621, 774 P.2d 1247 (1989); *State v. Stroud,* 30 Wash.App. 392, 634 P.2d 316 (1981).[1] LaFave supports the conclusion reached by these cases, stating that, while no investigative stop can be found when an officer merely approaches a car and speaks with its occupants, "other police action which one would not expect if the encounter was between two private citizens—boxing the car in ... or use of flashing lights as a show of authority—will like-

ly convert the event into a Fourth Amendment seizure." 3 W. LaFave, *Search and Seizure* § 9.2(h), at 416–17 (2d ed. 1987).

We are satisfied that, under the circumstances of the present case, Ozhuwan was subjected to an investigatory stop.

■ Our conclusion makes it necessary to consider whether sufficient grounds existed to justify the stop. In order to justify his investigative stop of Ozhuwan, Pickerel was required to have articulable facts creating a reasonable suspicion that imminent public danger existed or that serious harm to persons or property had recently occurred. *See, e.g., Coleman v. State,* 553 P.2d 40, 46 (Alaska 1976); *Allen v. State,* 781 P.2d 992, 993 (Alaska App.1989); *State v. G.B.,* 769 P.2d 452, 455 (Alaska App. 1989). A reasonable suspicion is one that has some factual foundation in the totality of the circumstances observed by the officer in light of the officer's knowledge. *See United States v. Sokolow,* —— U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). The fundamental inquiry is whether "a prompt investigation [was] required ... as a matter of practical necessity." *G.B.,* 769 P.2d at 456.

In the present case, the primary fact articulated by Pickerel to support his suspicion of wrongdoing was his general awareness that the Swiftwater Campground was often used at night by minors as a place to drink liquor. In addition, Pickerel relied on his impression that it was unusual, though not unlawful, for cars to be parked near the boat launch—as opposed to the area of the campground proper.

■ It has been widely recognized, however, that an area's reputation for criminality does not, standing alone,

---

1. The three cases relied on by the state for the contrary conclusion are readily distinguishable: In *Crauthers v. State,* 727 P.2d 9 (Alaska App. 1986), a car stopped in the middle of a lane of traffic and its driver rolled down the window. We found that, under the circumstances, an officer was justified in pulling his patrol vehicle up behind the stopped car, activating its overhead lights, and contacting the driver. We found the conduct to be "a reasonable precautionary measure, given that the two cars were in a traffic lane." *People v. Holdman,* 73 Ill.2d 213, 22 Ill.Dec. 679, 383 N.E.2d 155, 158 (1978), found it unnecessary to decide whether shining a light into a moving car was a seizure because the police had reason to believe that the car harbored a fugitive. In *Lawrence v. United States,* 509 A.2d 614, 616 n. 2 (D.C.App.1986), the court indicated that pedestrians who observed an approaching police car with its emergency lights on would ordinarily not be justified in believing that they were being stopped, absent some additional indication that the emergency lights were directed at them.

amount to a reasonable suspicion for an investigative stop of persons within the area. *See, e.g., People v. Loewen,* 35 Cal.3d 117, 196 Cal.Rptr. 846, 672 P.2d 436, 441 (1983); *In re Tony C.,* 21 Cal.3d 888, 148 Cal.Rptr. 366, 582 P.2d 957, 962 (1978); *Bartlett v. State,* 508 So.2d 567, 568 (Fla. App.1987); *People v. Hunt,* 188 Ill.App.3d 359, 135 Ill.Dec. 761, 544 N.E.2d 118, 119 (1989); *People v. Pizzo,* 144 A.D.2d 930, 534 N.Y.S.2d 249, 250 (1988). *See generally* LaFave, *supra,* § 9.3(c), at 457. Similarly, the mere fact that an occurrence is unusual will not support a reasonable suspicion unless the occurrence is somehow indicative of criminality. *See United States v. Barnes,* 496 A.2d 1040, 1043 (D.C. App.1985); *McCreary v. State,* 538 So.2d 1377, 1379 (Fla.App.1989); *State v. Chambers,* 69 Or.App. 681, 687 P.2d 805, 806 (1984).

■ Here, although Pickerel may well have been justified in believing that the campground was frequented by minors seeking a place to consume alcohol, he had no reason to believe that all people in the campground at night were minors looking for a place to drink, and his observation of the two parked cars provided no particularized information to support the conclusion that their occupants might be engaged in criminal activity. By the same token, there is nothing to indicate that the unusual location of the cars near the boat launch tended in any way to support an inference of criminality as opposed to innocent conduct.

To find a reasonable suspicion of criminality under the circumstances of this case would in effect allow the police the authority to conduct investigative stops in all cases involving cars lawfully parked at night in any "high crime area" or other unusual location. Under the circumstances, we are unable to conclude that an investigative stop was required "as a matter of practical necessity." *G.B.,* 769 P.2d at 456.

■ The state alternatively argues that Pickerel's actions were justified by his concern for the safety of the cars' occupants. It is well recognized that otherwise intrusive police conduct may be acceptable when there is a legitimate reason to be concerned for the welfare of a motorist. *See, e.g., Crauthers v. State,* 727 P.2d 9, 10 (Alaska App.1986); *State v. DeArman,* 54 Wash. App. 621, 774 P.2d 1247, 1249 (1989); *State v. Chisholm,* 39 Wash.App. 864, 696 P.2d 41, 43 (1985). Nevertheless, the provisions of the fourth amendment apply with equal force to seizures that are effected for the benign purpose of rendering assistance. *See United States v. Dunbar,* 470 F.Supp. 704, 706 (D.Conn.1979), *aff'd,* 610 F.2d 807 (2d Cir.1979). To justify conduct that would amount to an investigative stop, an officer must be aware of at least some specific circumstances supporting a reasonable belief that the occupants of a vehicle need assistance.

■ Here, Pickerel observed two cars lawfully parked in a campground, positioned driver's door to driver's door. Although it was nighttime and Pickerel thought it was unusual for the cars to be there, they were lawfully parked in a public area. Pickerel observed no actual indication of any problem and had received no request for assistance. He saw nothing in particular to make him believe that the occupants of the two cars needed assistance.

Under the circumstances, Pickerel's generalized concern for safety could certainly have justified him in approaching the cars and making contact with their occupants in a nonintrusive manner. However, absent more specific signs that the occupants of the cars needed assistance, Pickerel was not justified in taking actions that amounted to a fourth amendment seizure. This is particularly true in the present case, because, according to Pickerel, he was acting not only on the basis of his concern for the welfare of the occupants, but also to investigate potential criminal misconduct. *See Wibben v. North Dakota State Highway Comm'r,* 413 N.W.2d 329, 331 n. 1 (N.D. 1987); *State v. DeArman,* 54 Wash.App. 621, 774 P.2d 1247, 1249 (1989).

Because we find that the evidence in this case was obtained as a result of an investigative stop that was made without reasonable suspicion, we conclude that the superior court erred in denying Ozhuwan's mo-

tion to suppress. Accordingly, the judgment of conviction is REVERSED.