Randy S. **BEAUVOIS**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. A-4030.

Court of Appeals of Alaska.

Aug. 21, 1992.

Rehearing Denied Sept. 14, 1992.

---

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

MANNHEIMER, Judge.

Randy S. Beauvois appeals his conviction and sentence for first-degree robbery, AS 11.41.500(a)(1). We affirm.

On May 22, 1990, M.G., a juvenile, was thrown out of her home in Anchorage. She stole her mother's 1981 Corvette and drove to Wasilla, where she picked up a friend, Glenn Barthelemy, Jr., Barthelemy and M.G. then drove to Big Lake. There, they picked up Randy Beauvois, another friend of theirs, who was hitchhiking.

The three decided to drive to Fairbanks. Upon their arrival, Beauvois tried to convince Barthelemy to help him rob a cab driver; Barthelemy talked him out of it. On May 27, the three friends decided to return to Anchorage, but, on their way out of town, they stopped at the Chena River Wayside campground.

In the middle of the night (approximately 2:50 a.m. on May 28), Beauvois left the campground and walked the short distance to a 7–Eleven convenience store. Beauvois gathered various items and took them to the counter where Valorie Key, the clerk, totaled Beauvois's purchase. Beauvois

then said that he needed one more item; when Key asked what it was, Beauvois told her, "I'll take the money in the drawer." Key thought Beauvois was joking, but Beauvois said that he was "as serious as a heart attack". He then pulled out a fileting knife to corroborate his words.

Beauvois took the money and the sack of groceries, then ran out of the store, heading north toward the campground, where his friends were waiting for him. When Beauvois arrived, he jumped in the Corvette and said, "Quick, drive away." M.G. started to drive out of the campground.

In the meantime, Key had called the Fairbanks police and given them a description of Beauvois. Key also told the police that Beauvois was heading north on foot. Officer Daniel Hoffman, already in the vicinity, received the report of the robbery and decided to search the area north of the store, toward the Chena Wayside campground.

Within one minute, Hoffman was driving down University Avenue, the only road into the campground. He saw no pedestrians or vehicles moving along University Avenue. Hoffman then surmised that the robber might have escaped on foot but was fleeing to a vehicle waiting in the campground. Hoffman decided to head toward the campground entrance and stop any moving vehicle, under the assumption that, while most people would be sleeping at 3:00 a.m., anyone who was awake might have seen something.

As Hoffman neared the campground, he noticed a Corvette leaving. He decided to stop the car to briefly check whether any of the occupants fit Key's description of the robber. Hoffman blocked the Corvette's exit, and he called in the car's license plate number to his dispatcher. While Hoffman was doing this, Glenn Barthelemy jumped out of the passenger side of the vehicle. Hoffman, seeing that Barthelemy potentially matched the robber's description, got out of his patrol car, conducted a pat-down search of Barthelemy, and placed him in the patrol car. Upon closer inspection, Barthelemy failed to match the description on certain key points.

Because of his doubt, Hoffman asked his dispatcher to have the store clerk come to the scene to look at Barthelemy.

At this time, the dispatcher informed Hoffman that the Corvette had been reported stolen. Hoffman ordered the driver, M.G., to get out of the car and identify herself. Hoffman then learned from his dispatcher that M.G. had been reported as a missing person.

Hoffman walked back to the Corvette and saw the knees of a person wearing blue sweat pants protruding from beneath a blanket in the back seat. Hoffman removed the blanket and discovered Beauvois, who matched the description of the robber. Beauvois was holding some crumpled money which he had stolen from the 7–Eleven. When the store clerk arrived, she identified Beauvois as the robber.

Beauvois was indicted for first-degree robbery. He moved to suppress all evidence stemming from the stop of the Corvette, arguing that this stop had been an illegal seizure under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution.

Superior Court Judge Richard D. Savell denied Beauvois's motion. Judge Savell found that, given the recent occurrence of a serious felony, and given the information the store clerk had furnished about the robber's escape on foot and the direction the robber was headed, Hoffman's stop of the Corvette and its occupants to ask questions was both justified and minimally intrusive. When Barthelemy jumped out of the car and appeared to match the description of the robber, Hoffman was justified in further investigation. Thereafter, Judge Savell found, unfolding events justified Hoffman's continuing investigative efforts.

Following the superior court's ruling, Beauvois entered a plea of no contest, reserving the right to challenge this ruling on appeal. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

██ The validity of an investigative stop is a mixed question of fact and law. On appeal, this court must accept the trial

court's findings of fact unless they are shown to be clearly erroneous. Whether or not the investigative stop was justified under those facts is a question of law subject to *de novo* review. *State v. Garcia,* 752 P.2d 478, 480 (Alaska App.1988).

■ Beauvois does not dispute the trial court's finding that, once Barthelemy jumped from the car, Officer Hoffman's actions were justified. Instead, Beauvois argues that Hoffman's initial stop of the car was illegal because there was nothing to link either the car or its visible occupants to the recently committed robbery. Beauvois relies upon *Ozhuwan v. State,* 786 P.2d 918 (Alaska App.1990), where this court invalidated an investigative stop of a car found in a campground at night.

We believe that *Ozhuwan* is distinguishable from Beauvois's case. In *Ozhuwan,* the police officer stopped the car because its lights were off and because the campground was known as a place where minors came at night to drink liquor. The officer suspected that the occupants of the car were illegally drinking or perhaps needed assistance. *Id.* at 920. This court held that the investigative stop was illegal because the officer was aware of no circumstances, other than the campground's reputation, to justify his suspicion that the occupants of the car were juveniles or were drinking alcoholic beverages. Further, the officer had no information (apart from his knowledge that the car was parked at night by the river with its lights off) to justify his suspicion that the occupants needed assistance. *Id.* at 922.

In Beauvois's case, on the other hand, Officer Hoffman had uncontroverted evidence that a serious felony had just occurred in the vicinity of the campground and that the robber had fled on foot toward the campground. The time was three o'clock in the morning, when most people are asleep. The streets leading to the campground were deserted. Hoffman saw only one vehicle moving: the Corvette leaving the campground. It was reasonable to suspect that the occupants of the Corvette had been awake in the campground when the robber came through, and that they might have seen something. Under these circumstances, and especially given the recency and the seriousness of the crime, prompt investigative efforts were justified. Even though Hoffman had no other information to link the Corvette or its occupants to the robbery, he could validly stop the car and ask its occupants if they knew anything or had seen anything that might aid Hoffman's investigation of the crime that had just been committed.

In *Metzker v. State,* 797 P.2d 1219 (Alaska App.1990), this court specifically recognized the authority of the police to conduct investigative stops of potential witnesses to a recent criminal occurrence, even when there is no reason to believe that the person stopped participated in the crime.

> Under appropriate circumstances, a police officer may approach and stop a person for the purpose of investigating a crime even though the officer has no reason to believe that the person stopped has committed the crime which is being investigated. 3 W. LaFave, *Search and Seizure,* § 9.2(b), at 353–57 (1987).... [C]ourts generally seem to be in agreement that the fourth amendment does not allow the police to stop potential witnesses to the same extent as suspects of a crime. It appears the police are justified in stopping witnesses only where exigent circumstances are present, such as where a crime has recently been reported. *See, e.g., Baxter v. State,* 274 Ark. 539, 626 S.W.2d 935, 937 (1982) (police entitled to stop car in vicinity of recently committed armed robbery to ask driver if he had seen anybody nearby)....

*Metzker,* 797 P.2d at 1221.

■ Under the facts of this case, Hoffman was justified in stopping the occupants of the Corvette.[1] We therefore af-

---

1. We recognize that, at the evidentiary hearing, Hoffman stated that his intent in stopping the Corvette was to see if anyone inside the car matched the description of the robber, rather than to conduct the type of witness inquiry authorized in *Metzker.* However, Hoffman's subjective intent when he stopped the car is irrelevant. The test is whether, under the facts

firm Beauvois's conviction for first-degree robbery.

Beauvois also challenges his sentence. As a first felony offender, Beauvois was subject to a presumptive term of 7 years' imprisonment for committing first-degree robbery armed with a deadly weapon. AS 11.41.500(b); AS 12.55.125(c)(2). At Beauvois's sentencing hearing, Judge Savell agreed with Beauvois that his conduct was among the least serious within the definition of first-degree robbery, a mitigating factor under AS 12.55.155(d)(9). Beauvois asked Judge Savell to find the non-statutory mitigating factor of uncommonly good potential for rehabilitation, *Smith v. State*, 711 P.2d 561, 569–572 (Alaska App.1985), but Judge Savell ruled that Beauvois had failed to prove this mitigating factor by clear and convincing evidence. (Beauvois does not challenge this ruling on appeal.)

Because Judge Savell found mitigating factor (d)(9), he was authorized to reduce Beauvois's sentence to 3½ years to serve. AS 12.55.155(a)(2). Judge Savell decided, however, that even this sentence would be manifestly unjust. He therefore referred Beauvois's case to the three-judge panel under AS 12.55.165. The three-judge panel ruled, however, that it would not be manifestly unjust to sentence Beauvois to an adjusted presumptive term of 3½ years' imprisonment. The panel therefore returned the case to Judge Savell under AS 12.55.175(b). When the case was returned to him, Judge Savell sentenced Beauvois to 6 years' imprisonment with 2½ years suspended (3½ years to serve).

On appeal, Beauvois does not challenge Judge Savell's decision to impose suspended jail time, but he challenges the ruling of the three-judge panel. Beauvois asserts that 3½ years to serve is manifestly unjust. He argues that the robbery was an impulsive, out-of-character act, committed while he was depressed and in desperate finan-cial straits. Beauvois points out that he has no prior criminal convictions and that the store clerk suffered no physical injury.

■ The legislature has enacted a 7–year presumptive term for first felony offenders who use a dangerous instrument in the commission of first-degree robbery. This presumptive term—the legislature's judgement as to the appropriate sentence for a typical first offender committing a typical armed robbery—represents the starting point for analyzing Beauvois's sentence. *Juneby v. State*, 641 P.2d 823, 833, 838 (Alaska App.1982).

In its decision, the three-judge panel agreed with Beauvois that the robbery appeared to have been an impulsive act. However, the panel noted that Beauvois did not have exceptionally good prospects for rehabilitation. The panel also found that the robbery, while resulting in no physical injury to the clerk, had had lasting psychological effects on her. The panel concluded:

> We have in mind that the legislature has provided a 7–year presumptive term for this ... class of offense, apparently believing that it is amongst the most serious class of offense that can be committed. [We also take into consideration] that the ... existence of a [statutory] mitigating factor in this matter allows the trial court to reduce this legislatively mandated benchmark by one-half. We therefore remand this case to the trial court for sentencing.

Beauvois points to *State v. Price*, 740 P.2d 476 (Alaska App.1987), as an instance in which this court upheld the three-judge sentencing panel's decision that a youthful first offender should receive less than 50 percent of the presumptive term. 740 P.2d at 482–83. However, Price's sentencing was referred to the three-judge panel because Price had exceptionally good pros-

---

known to the police officer, the stop of the car was objectively justified. *See* W. LaFave, *Search and Seizure* (2nd ed. 1987), § 3.2(b), Vol. 1, pp. 566–69 (objective test for probable cause), and § 9.3(a), Vol. 3, pp. 425:

> [The] police must have a particularized and objective basis [for making an investigative

stop]. This test, as is the case with the legal standard for arrest, is *purely* objective and thus there is no requirement that an actual suspicion by the officer be shown.

(emphasis in the original)

pects for rehabilitation. *Id.* at 480. In Beauvois's case, Judge Savell declined to find this non-statutory mitigator, and Beauvois has not appealed that ruling. The three-judge panel in Beauvois's case expressly noted Beauvois's lack of exceptionally good potential for rehabilitation as a reason supporting their decision to send the case back to Judge Savell.

Moreover, it is the province of the sentencing court (here, the three-judge panel) to evaluate the importance of the various sentencing criteria under the particular facts of each case. *Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973); *State v. Chaney,* 477 P.2d 441 (Alaska 1970). Even though the three-judge panel in *Price* chose to emphasize the defendant's potential for rehabilitation and sentence him to less than the minimum term otherwise required by the statutes, their action in that case does not mean that the panel must evaluate every other case the same way.

Based on our review of the record, the three-judge panel was not clearly mistaken when they concluded that 3½ years to serve was not a manifestly unjust sentence for Beauvois. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974); *Lloyd v. State,* 672 P.2d 152, 156 (Alaska App.1983). We therefore uphold the three-judge panel's decision to return Beauvois's case to Judge Savell for sentencing.

The judgement of the superior court is AFFIRMED.