**Mackey MARSH, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–4166.

Court of Appeals of Alaska.

Oct. 2, 1992.

---

René L. Wright, Asst. Public Defender, Kenai, and John B. Salemi, Public Defender, Anchorage, for appellant.

David M. Weingartner, Asst. Atty. Gen., Kenai, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Mackey Marsh pleaded no contest to the offense of driving while his license was revoked, AS 28.15.291, reserving his right to appeal the district court's denial of his motion to suppress the evidence against him. *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). We affirm.

While on routine patrol during the early evening hours of November 24, 1990, Alaska State Trooper Simon Brown observed a car which appeared to be stalled on the side of the Kenai Spur Highway. Brown activated his overhead lights and pulled up behind the car. As Brown did so, he noticed the driver start the engine. When Brown spoke to the driver, he learned that the driver was Marsh and that Marsh's license had been revoked.

Marsh argues that the trooper's use of his overhead lights was a clear signal that Marsh was not free to leave, thus turning the contact into an investigative stop. Marsh then argues that, because there was nothing to justify an investigative stop, the evidence of his identity and the fact that his license was revoked should have been suppressed.

Trooper Brown testified that he activated his overhead lights for safety reasons in accordance with standard police procedure so that traffic on the highway could see him parked along the road in the dark. Brown also testified that it is standard policy for the troopers to stop and check on stalled vehicles.

Based on Brown's testimony, the State argues that Brown's actions were not an "investigative stop" but were, instead, actions taken pursuant to Brown's community caretaker duties described in *Crauthers v. State*, 727 P.2d 9, 10 (Alaska App.1986). The State asserts that, when an officer stops at night to aid a motorist in an apparently stalled car, a reasonable person in the motorist's position would view the officer's use of overhead lights as merely a measure to protect both the patrol car and the stalled vehicle from being hit in the dark. Noting that an objective test is employed to determine whether an officer's actions constitute a "seizure" for Fourth Amendment purposes, *Waring v. State*, 670 P.2d 357, 364 (Alaska 1983), and *Ozhuwan v. State*, 786 P.2d 918, 920–21 (Alaska App.1990), the State argues that Brown's use of his patrol car's lights would not have seemed coercive to a reasonable (innocent) motorist in a stalled vehicle. Thus, according to the State, there was no seizure and therefore the State did not need to establish reasonable suspicion to justify Brown's actions.

We need not resolve the issue raised by the State because we find that there was a reasonable basis for Brown's actions, even if Brown's contact with Marsh is viewed as an investigative stop.

> [I]ntrusive police conduct may be acceptable when there is a legitimate reason to be concerned for the welfare of a motorist.... To justify conduct that would amount to an investigative stop, an officer must be aware of at least some specific circumstances supporting a reasonable belief that the occupants of a vehicle need assistance.

*Ozhuwan*, 786 P.2d at 922.

Brown testified that he believed the car was stalled because it was parked on the side of the highway on a cold day and because the driver was making movements as if attempting, unsuccessfully, to start the ignition. Under these circumstances, Brown was justified in making contact with Marsh in order to determine whether Marsh needed assistance.

Marsh contends that Brown's actions cannot be justified under this rationale be-

cause, just as Brown pulled in behind him, Marsh succeeded in starting his car. However, at the time Marsh started his car, Brown had already initiated the investigative stop. Moreover, Marsh's success in getting the engine to turn over did not necessarily rule out the possibility that there was a continuing problem with the vehicle.

The "reasonable suspicion" test did not require Brown to affirmatively negate all other explanations before stopping to help Marsh, nor did it require the State to show that it was "more probable than not" that Marsh needed assistance. Rather, the State had to establish only that there was a substantial possibility that police assistance was required. See the analysis in *Anchorage v. Cook*, 598 P.2d 939, 941–942 (Alaska 1979), and W. LaFave, *Search and Seizure* (2nd ed. 1987), § 9.3(b), Vol. 3, pp. 431–432.

Once Brown contacted Marsh, Brown was authorized by AS 28.15.131 to request to see Marsh's driver's license, the act that led to the discovery that Marsh's license had been revoked.

The judgement of the district court is AFFIRMED.