Jonna ROGERS–DWIGHT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5445.

Court of Appeals of Alaska.

July 28, 1995.

Susan M. Crocker, Asst. Public Defender, Kenai, and John B. Salemi, Public Defender, Anchorage, for appellant.

Ryan C. Bell, Asst. Dist. Atty., Sharon A.S. Illsley, Dist. Atty., Kenai, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

Jonna Rogers–Dwight was charged with driving while intoxicated, AS 28.35.030(a). She asked the district court to suppress the evidence against her, arguing that the officer who arrested her had illegally stopped her vehicle. When the district court denied her suppression motion, Rogers–Dwight changed her plea to no contest, reserving her right to appeal the suppression issue. *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974). We uphold the district court's ruling on the suppression motion, and we therefore affirm Rogers–Dwight's conviction.

Rogers–Dwight's arrest for driving while intoxicated arose out of an episode involving three vehicles on the Kenai Spur Highway. State Trooper John Whitehead, driving his patrol car, observed a truck exceeding the speed limit, and he gave chase. The speeding truck had just passed Rogers–Dwight's

car when Trooper Whitehead turned on his flashing overhead lights to signal the driver of the truck to pull over. Rogers–Dwight saw the trooper activate his lights, and she too pulled over to the side of the road—not because she believed the trooper was trying to stop her, but because she knew she was legally required to yield her lane to the patrol vehicle.

The driver of the speeding truck pulled off the highway and came to a stop. Rogers–Dwight brought her car to a stop about fifty feet behind the truck. Trooper Whitehead stopped his patrol car some distance behind Rogers–Dwight's car.

Whitehead got out of his patrol car and walked up to Rogers–Dwight's car; he stood outside her car on the driver's side, intending to tell her that he had not been chasing her and that she was free to go. However, Rogers–Dwight had considerable difficulty trying to roll down her window to speak to the trooper. (The window mechanism was apparently broken.) She finally opened her car door to converse with the officer. When she did so, Whitehead could smell an odor of alcoholic beverages emanating from the car. During their ensuing brief conversation, Whitehead noticed that Rogers–Dwight's speech was slurred.

Based on this, Whitehead decided to detain Rogers–Dwight to further investigate whether she was driving while intoxicated. He asked Rogers–Dwight for her driver's license; she had no license but she produced a state identification card, which Whitehead took from her. Whitehead then told Rogers–Dwight to turn off her engine and wait for him while he dealt with the speeder. When Whitehead returned to Rogers–Dwight, he administered field sobriety tests and asked her to take a preliminary breath test. On the basis of all his observations, Whitehead arrested Rogers–Dwight.

On appeal, Rogers–Dwight argues that Whitehead subjected her to an investigative stop when he had no suspicion that she had done anything wrong. Rogers–Dwight concedes that she pulled her car to the side of the highway, not because of constraint, but because she understood her duty to yield to an emergency vehicle. At that time, Rog-

ers–Dwight did not think she was being stopped. She argues, however, that the situation changed when the trooper stopped his patrol car behind her (instead of going past her and parking his patrol car between her and the truck). Rogers–Dwight contends that, once the patrol car stopped behind her with its lights flashing, a reasonable person in her position would have felt constrained to remain where she was until the trooper affirmatively allowed her to leave. Thus, Rogers–Dwight concludes, the trooper's actions amounted to a Fourth Amendment seizure, and this seizure was illegal because it was not supported by articulable suspicion of wrongdoing.

■ In determining whether a police officer's actions amount to a Fourth Amendment seizure of a person, we disregard both the subjective intentions of the police officer and the subjective perceptions of the person with whom the officer is dealing. Instead, the question is how a reasonable person, innocent of wrongdoing, would have perceived the officer's actions. Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (2nd ed. 1987), § 5.1(a), Vol. 2, pp. 388–89. A seizure occurs when a police officer engages in "a show of official authority such that a reasonable person would have believed that he [or she] was not free to leave." *Florida v. Royer*, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983). The Alaska Supreme Court uses this same objective test when determining whether a seizure has occurred for purposes of the search and seizure clause of the Alaska Constitution (Article I, Section 14). *Waring v. State*, 670 P.2d 357, 364 (Alaska 1983).

■ The present case is unusual because Rogers–Dwight did not pull over in response to a "show of authority" directed toward her. The trooper activated his overhead lights in order to signal the driver of the speeding truck to pull over. A reasonable person in Rogers–Dwight's position, having seen the speeding truck go past and having seen the trooper activate his lights, would have understood that the trooper was not after her. Rogers–Dwight in fact perceived the situation in this manner.

When a police car approaches with either its overhead lights or its siren activated, all drivers are obliged to pull over and stop, then wait for the police car to pass. *See* 13 AAC 02.–140(a).[1] Therefore, when a reasonable person in Rogers–Dwight's position realized that his or her car was between a speeder and a pursuing police vehicle, the reasonable person would pull over and stop. Such a stop would be the result of the generalized statutory duty applicable to all drivers, not a "show of authority" within the meaning of search and seizure law. Again, Rogers–Dwight perceived the situation in this manner; she testified that she stopped her car at the side of the highway to comply with her statutory obligation to yield to the trooper's vehicle.

At the same time that Rogers–Dwight was stopping her vehicle, the driver of the speeding truck was also stopping the truck. When Rogers–Dwight parked her car about 50 feet behind the truck, she was still situated between the truck and the pursuing trooper. As Trooper Whitehead approached the scene, he decided to park behind Rogers–Dwight's car rather than try to maneuver between the two vehicles.

Rogers–Dwight's suppression argument rests solely on the assertion that a reasonable driver in this situation, seeing the patrol car come to a stop behind her, would have felt constrained to stay where she was and submit to investigative questioning. Rogers–Dwight relies on *Ozhuwan v. State*, 786 P.2d 918, 920 (Alaska App.1990), where this court held that the occupant of a parked car was seized for Fourth Amendment purposes when a police officer brought his patrol vehicle within ten yards of the parked car, blocking the car's exit, then activated his overhead lights and approached the car to question the occupant.

*Ozhuwan* represents mainstream law in this area. As *LaFave* says, "[P]olice action which one would not expect if the encounter was between two private citizens—boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show of authority—will likely convert the event into a Fourth Amendment seizure." *Id.*, § 9.2(h), Vol. 3, pp. 416–17. In *Ozhuwan*, the government offered two justifications for the police officer's actions: that the officer was engaged in the investigation of possible criminal activity and, alternatively, that the officer had approached the car out of concern for the safety of its occupants. Regarding the first offered justification, this court ruled that the facts of the case failed to provide any reasonable suspicion of criminal activity. *Ozhuwan*, 786 P.2d at 922. Regarding the government's alternative justification, this court stated:

> [Although] [i]t is well recognized that otherwise intrusive police conduct may be acceptable when there is a legitimate reason to be concerned for the welfare of a motorist[,] ... [n]evertheless, the provisions of the fourth amendment apply with equal force to seizures that are effected for the benign purpose of rendering assistance.... To justify conduct that would amount to [a fourth amendment] stop, an officer must be aware of at least some specific circumstances supporting a reasonable belief that the occupants of a vehicle need assistance.

*Ozhuwan*, 786 P.2d at 922. The court then found that the circumstances of the case did not support a reasonable belief that the occupants of Ozhuwan's car needed the officer's assistance. *Id.*

It is important to note that, in *Ozhuwan*, this court recognized that a police officer's "community caretaker" responsibilities could provide justification for a Fourth Amendment stop. (For a synopsis of the types of police activities that courts have found to be justified under the rubric of "community caretaker" functions, see *Provo City v. Warden*, 844 P.2d 360, 362–65 (Utah App.1992), *aff'd*, 875 P.2d 557 (Utah 1994).) The deciding factor in *Ozhuwan* was that the circum-

---

1. 13 AAC 02.140(a) provides:
   Upon the approach of an authorized emergency vehicle making use of ... visual ... and audible signals ..., or a police vehicle making use of either a visual or an audible signal, the driver of every vehicle proceeding in any direction shall yield the right-of-way by slowing and pulling to the right edge of the roadway, clear of an intersection[,] and stopping[] to await passage of the emergency vehicle.

stances of the case did not give the officer reason to believe that a stop was necessary to carry out his community caretaker functions.

This court's decision in *Crauthers v. State*, 727 P.2d 9 (Alaska App.1986), is an instructive point of comparison. In *Crauthers*, a police officer on routine patrol was approaching an intersection when he saw the car in front of him behave unusually. The car slowed down and came to a stop about 25 to 30 feet before the intersection, and then the driver of the car rolled down his window. Thinking that the driver was attempting to get his attention to ask for directions or other assistance, the officer pulled in behind the car; as a safety precaution (because the two cars were parked in a traffic lane), the officer activated his overhead lights. When the officer made contact with the driver, he discovered the driver to be intoxicated.

On appeal, the driver of the car argued that he had been subjected to an unlawful stop when the officer parked behind him and turned on his lights. This court disagreed:

> When a police officer observes ... circumstances which he ... reasonably concludes to be a request for contact or assistance, the officer is justified in making that contact.

*Crauthers*, 727 P.2d at 11.

The facts of Rogers–Dwight's case bear a resemblance to the facts of *Ozhuwan* and the facts of *Crauthers*. In all three cases, a law enforcement officer activated his patrol car's overhead lights and then approached the occupant of a parked car. However, even accepting Rogers–Dwight's assertion that a reasonable person in her position would have perceived the trooper's actions as a Fourth Amendment stop, we nevertheless find that

Rogers–Dwight's case is more like *Crauthers* than *Ozhuwan*—because, under the facts of Rogers–Dwight's case, Trooper Whitehead did have an articulable reason to make contact with her.

As explained above, under 13 AAC 02.140(a), Rogers–Dwight was obliged to pull her car to the side of the road and remain stopped there "to await passage of the [trooper's] vehicle". But the trooper's vehicle did not pass Rogers–Dwight's car. Trooper Whitehead, apparently for reasons of traffic safety, chose to park behind her. Under these circumstances, it was reasonable for Trooper Whitehead to approach Rogers–Dwight and clarify that, notwithstanding the regulation, she was free to go.

Even if Rogers–Dwight had been under no statutory duty to remain where she was, Trooper Whitehead's community caretaker responsibilities would still justify his action of approaching and speaking to Rogers–Dwight. Rogers–Dwight's vehicle was parked between a stopped speeder and a law enforcement officer who was about to contact the speeder. In order to eliminate the chance that Rogers–Dwight might be harmed (if Trooper Whitehead's impending encounter with the driver of the truck took a bad turn), Whitehead was justified in approaching Rogers–Dwight and asking her (or directing her) to drive on.

The judgment of the district court is AFFIRMED.