Joseph W. **COFEY**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. A–10079.

Court of Appeals of Alaska.

Sept. 18, 2009.

---

**3.** 783 P.2d 1173, 1181 (Alaska App.1989).   **4.** *Id.*

Tracey Wollenberg, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

### OPINION

BOLGER, Judge.

In this appeal we consider whether a police officer conducted an investigative stop when he used his red overhead lights to contact a pedestrian. We conclude that the officer made an investigative stop when he pulled up behind the pedestrian, activated his overhead lights, jumped out of his patrol car, and instructed the pedestrian to approach the car.

### Background

Late in the evening on August 18, 2006, Fairbanks Police Officer James O'Malley was dispatched to the Cofey residence after the police department received a report of a fight or disorderly conduct. The dispatcher informed O'Malley that a car containing some of the people involved in the incident had departed the scene.

As O'Malley neared the residence, he saw two individuals on a street about twenty yards behind the residence. One of the men ran away and the other, Joseph W. Cofey, looked at O'Malley and then started to walk away. Cofey walked in front of O'Malley's patrol car and O'Malley pulled ahead so that Cofey was illuminated by the vehicle's headlights. Officer O'Malley then activated his overhead lights to let Cofey know that he wanted to talk to him.

O'Malley had no information that Cofey was involved in the incident, and there was no indication that Cofey had been a victim or witness of any assault. O'Malley observed no commotion, yelling, or physical confrontation between the two men. Prior to O'Malley's contact, Cofey had done nothing to suggest that he was armed and dangerous.

After he activated his overhead lights, Officer O'Malley jumped out of his car and said, "Come over here, I need to talk to you." Cofey responded "Yeah," walked a couple of steps, and stopped in a driveway. Cofey then began to dig in his front jacket pockets. O'Malley asked him to take his hands out of his pockets several times and Cofey responded "Yeah, okay, I will," but continued to dig in his pockets. O'Malley could see a hard object in one of Cofey's pockets, and concluded that he might be trying to find a weapon. Officer O'Malley then drew his weapon and ordered Cofey to take his hands out of his pockets.

Cofey was startled when he saw Officer O'Malley pointing his weapon at him and threw both of his hands into the air. In his left hand, Cofey held a baggie containing cocaine, which he then tossed over his left shoulder. Officer O'Malley arrested Cofey, and discovered that the hard object in Cofey's pocket was actually two cell phones.

Before trial, Cofey moved to suppress the cocaine evidence, arguing that Officer O'Malley stopped him illegally without reasonable suspicion. In his ruling denying Cofey's motion, the trial judge found that when the officer first approached Cofey, "there was no reason to suspect criminal activity by Mr. Cofey as he was standing out in the street or along the side throwing a football," and that "at that point there would have been no reason to detain him for any reason."

However, the judge also concluded that Officer O'Malley's activation of his overhead lights did not transform the contact into a stop, reasoning that the lights served to identify O'Malley as a police officer, and noting that Cofey's testimony indicated that he was not worried about the lights. The judge further concluded that when Cofey began digging in his pockets and refused to remove his hands, the officer was entitled to stop Cofey in order to protect himself.

After the judge's ruling, a jury convicted Cofey of one count of fourth-degree misconduct involving a controlled substance.[1]

### When Did This Encounter Become an Investigative Stop?

When we review the denial of a motion to suppress evidence, we view the record in the light most favorable to the judge's findings, and we accept the findings unless they are clearly erroneous.[2] We independently determine whether a trial court's factual findings support the conclusion that an investigative stop was justified.[3]

▮▮▮▮ A police officer is authorized to make an investigative stop when the officer has a reasonable suspicion that an imminent public danger exists or that serious harm to persons or property has recently occurred, and that the individual presents that danger or has caused that harm.[4] But an officer does not conduct an investigative stop "by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen...."[5] Deciding whether a police-citizen contact rises to the level of an investigative stop requires an objective determination: "[W]hether or not a reasonable person would believe that he or she was free to go."[6]

We noted in *Ozhuwan v. State* that an officer's activation of his overhead lights is "the traditional hallmark of a traffic stop."[7] In that case, an officer saw two cars parked near a campground boat launch that was frequently used by minors as a place to consume alcohol.[8] The officer drove his patrol car to within approximately ten yards of the parked cars, positioned his car between the cars and the exit to the boat launch area, and activated his overhead lights and high-beam headlights before exiting his car to contact the parked vehicles.[9] We concluded that the police conduct was "virtually tantamount to an overt command to 'stay put.'"[10]

However, police overhead lights may not always carry the same meaning for a pedestrian. The District of Columbia Court of Appeals has suggested that "there is a critical difference between an officer's turning his vehicle's flashing lights on to signal a motorist to stop and turning on emergency equipment to stop a pedestrian."[11] As that court

1. AS 11.71.040(a)(3)(A).

2. *Stumbaugh v. State*, 599 P.2d 166, 172 (Alaska 1979); *Gallmeyer v. State*, 640 P.2d 837, 839 (Alaska App.1982).

3. *Beauvois v. State*, 837 P.2d 1118, 1121 (Alaska App.1992).

4. *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976).

5. *Waring v. State*, 670 P.2d 357, 363 (Alaska 1983) (quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983)).

6. *Id.* at 364.

7. 786 P.2d 918, 921 (Alaska App.1990).

8. *Id.* at 920.

9. *Id.*

10. *Id.*

11. *Lawrence v. United States*, 509 A.2d 614, 616 n. 2 (D.C.1986).

explained, pedestrians "ordinarily [are] not likely to know that an officer is signaling for a stop until the officer communicates [his intention] in a more direct manner...."[12]

Accordingly, something more than the mere activation of overhead lights may be required to establish that a pedestrian has been subjected to an investigative stop. In a case similar to the one before us, the District of Columbia Court of Appeals found that a pedestrian had indeed been subjected to an investigative stop:

> In this case, [beyond the activation of the officer's overhead lights,] we have [an] additional component. Here, not only did the officers drive right up to appellant with the lights on and siren running, but Officer Carter testified that "[w]hen we got to the location, I got out of the car, and then I asked Mr. Davis to come over to the car." ... We do not think that a reasonable person in that situation would have felt free to leave or decline to comply.[13]

The court thus concluded that the police officer did effect a stop by pulling up to the pedestrian, activating his overhead lights, getting out of the car, and telling the pedestrian to "come over to the car."[14]

■ In the present case, we need not decide whether a police officer's activation of his patrol car's overhead lights, standing alone, can constitute an investigative stop of a pedestrian because, even if we were to adopt this rule, it would make no difference to our resolution of Cofey's case. Cofey was subjected to additional coercive measures beyond the activation of the patrol car's lights. Cofey was the only pedestrian in the area. O'Malley pulled up behind Cofey, positioning his car so that Cofey was illuminated by his headlights. O'Malley then got out of his car and instructed Cofey, "Hey, ... come over here ... I need to talk to you."

Given all of these circumstances, even if Cofey had not initially understood that the activated overhead lights were directed at him, O'Malley's subsequent actions, combined with his statement to Cofey, all conveyed that the officer was directing Cofey to stop. At that point, a reasonable person in Cofey's situation would conclude that he was not free to leave. Accordingly, Cofey's encounter with Officer O'Malley was an investigative stop.

### Was the Stop Supported by Reasonable Suspicion?

■ As explained above, to perform an investigative stop an officer must have a reasonable suspicion that an imminent public danger exists or that serious harm to persons or property has recently occurred, and that the individual stopped presents that danger or has caused that harm.[15] But, as the trial court found, at the time Officer O'Malley directed Cofey to approach his car, Cofey had done nothing to suggest that he posed a danger or that he had caused any harm. Although O'Malley testified that he was suspicious because Cofey looked at him and then start to walk away, he did not articulate any reason to believe that Cofey presented any imminent danger or had caused any type of harm.

The trial court found that when Officer O'Malley first approached Cofey, "there was no reason to suspect criminal activity by Mr. Cofey as he was standing out in the street or along the side throwing a football," and that "at that point there would have been no reason to detain him for any reason." Accordingly, we conclude that there was no reasonable suspicion to support the stop.

### Conclusion

We conclude that Cofey was subjected to an investigatory stop when Officer O'Malley activated his overhead lights and directed Cofey to approach his patrol car. The evidence discovered during this stop should have been suppressed because the stop was not supported ·by reasonable suspicion. We

---

**12.** *Davis v. United States,* 781 A.2d 729, 740 (D.C.2001).

**13.** *Id.*

**14.** *Id.*

**15.** *Coleman,* 553 P.2d at 46.

therefore REVERSE the superior court's judgment.[16]

---

**16.** In view of this disposition, we do not address the other issues that Cofey raises in this appeal.

