**Michael S. WEIL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10586.**

Court of Appeals of Alaska.

Feb. 18, 2011.

Kenneth W. Cole, Kenneth W. Cole Law Offices, Kenai, for the Appellant.

Martin C. Fallon, Assistant District Attorney, Kenai, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

BOLGER, Judge.

A state trooper contacted Michael S. Weil because it appeared that Weil was going to cross a road with his dog tethered to his four-wheeler. As a result of this contact, Weil was convicted of driving under the influence. Weil challenges the denial of his motion to suppress, arguing that the district court erred in upholding his stop as a community caretaker stop. We affirm Weil's conviction because we conclude that the trooper was justified in stopping Weil to avoid a potential threat to public safety.

*Background*

On June 14, 2008, at about 2:30 a.m., Alaska State Trooper Lawrence C. Erickson was driving down Kalifornsky Beach Road toward Soldotna when he noticed a four-wheeler coming down a gravel side street with a dog tied to it. The four-wheeler was driving down the right side of the street toward Kalifornsky Beach Road and the dog was walking down the middle of the street on a long lead. Sergeant Erickson made a U-turn and activated his overhead lights, intending to contact the driver to warn him not to drive his four-wheeler across the road. It was dark, there was traffic on the road, and Sergeant Erickson believed it would be unsafe for the dog and for any motorists who might be forced to take evasive action.

When Sergeant Erickson contacted the driver, Weil, he noticed that Weil was "obviously drunk and impaired." There was an open beer and two unopened beers on the rear rack of the four-wheeler next to the driver's seat. A subsequent breath test showed that Weil's blood alcohol content was

.226 percent. Weil was charged with driving under the influence.[1]

Before trial, Weil filed a motion to suppress the evidence, arguing that his stop was not supported by reasonable suspicion. At an evidentiary hearing on the motion, Sergeant Erickson testified that the only reason he stopped Weil was to warn him not to drive his four-wheeler across the road; Erickson said he did not believe it would be safe for Weil to "cross [the] highway with vehicles in the traffic flow with a dog tied to [his] four-wheeler." After hearing this testimony, District Court Judge Sharon Illsley denied the motion to suppress, concluding that the stop was a valid community caretaker stop.

Weil filed a motion for reconsideration, which Judge Illsley denied. Weil then entered a *Cooksey*[2] plea to driving under the influence, preserving his right to challenge the denial of his motion to suppress.

### Weil's stop was a valid community caretaker stop.

■ The parties do not challenge Judge Illsley's ruling that Weil was subjected to a Fourth Amendment seizure; the only claim on appeal is whether the court erred in ruling that Weil's seizure was a lawful community caretaker stop. In *Ozhuwan v. State*, we held that a Fourth Amendment seizure may be justified without reasonable suspicion of criminal activity if the police are validly acting within their community caretaker role—that is, if the police are aware of specific circumstances supporting a reasonable belief that police assistance is required.[3] In reviewing the trial court decision to uphold the stop, we view the facts in the light most favorable to the trial court's ruling.[4]

Weil argues that Judge Illsley clearly erred in finding that Sergeant Erickson's purpose in contacting him "had nothing to do with investigating a crime." He concedes

that Erickson testified at the suppression hearing that his only reason for stopping Weil was to prevent him from driving his four-wheeler across the road with a dog tethered to it. But Weil argues that, notwithstanding this testimony, "the Defense submits that the true purpose of the stop was to investigate." To support this claim, Weil asserts that "[i]t was after midnight and the officer saw activity and wanted to check it out. That [was] the basis for the stop, unbridled suspicion." He argues that Erickson's testimony that the stop was motivated by safety concerns was not credible because his four-wheeler was forty feet from the main road.

The record supports Judge Illsley's decision on this point. Sergeant Erickson testified that the four-wheeler was about twenty feet from the road when he contacted Weil. And, as Judge Illsley found, Weil's own exhibits showed that his twenty-foot dog lead, fully extended from the location of the stop, came within several feet of the fog line on Kalifornsky Beach Road.

Judge Illsley could also reasonably reject Weil's claim that Sergeant Erickson stopped him to investigate a possible crime. Judge Illsley found that Erickson observed Weil driving his four-wheeler toward a busy major road after dark with a dog tethered to it, and that Erickson contacted Weil to avoid a situation that was potentially dangerous to the dog and the motoring public. The record fully supports Judge Illsley's findings.

■ Weil next argues that the stop was not a valid community caretaker stop because he never asked for police assistance and there was no indication he was in distress. In previous cases we have upheld community caretaker stops where there was no overt request for police assistance.[5] We acknowledge that in these previous cases

---

1.  AS 28.35.030(a).

2.  *Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974).

3.  786 P.2d 918, 922 (Alaska App.1990); *see also Crauthers v. State*, 727 P.2d 9, 10–11 (Alaska App.1986) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)).

4.  *See Howell v. State*, 115 P.3d 587, 590 (Alaska App.2005).

5.  *Howell*, 115 P.3d at 589–90; *Marsh v. State*, 838 P.2d 819, 820 (Alaska App.1992).

there were facts suggesting that the motorists might need help even though they did not ask for it.[6] As Weil points out, there were no facts indicating that he was in distress when Erickson stopped him.

But we have also upheld community caretaker stops where the police acted to prevent a *potential* hazard.[7] For instance, in *Russell v. Anchorage*, we held that the police were justified in temporarily stopping a vehicle with a misted rear window to ensure that the defect was remedied; in reaching that conclusion, we emphasized that there was no evidence that the traffic stop was motivated by reasons other than warning the motorist of a potential traffic hazard.[8]

Other jurisdictions have similarly ruled that the police are justified in briefly detaining a motorist to warn of a potential safety hazard, regardless of whether that hazard warrants a citation for a traffic infraction.[9] As the Maine Supreme Court explained: "If we were to insist upon suspicion of activity amounting to a criminal or civil infraction ... we would be overlooking the police officer's legitimate role as a public servant to assist those in distress and to maintain and foster public safety."[10]

Weil urges this court to read the community caretaker doctrine more narrowly, lest it become "a means of avoiding the dictates of *Coleman*." Under *Coleman v. State*, the police may only conduct an investigatory stop if they have "reasonable suspicion that imminent public danger exists or [that] serious harm to persons or property has recently occurred."[11] The basic inquiry under *Coleman* is whether "a prompt investigation [was] required ... as a matter of practical necessity."[12]

We have never conclusively decided whether the *Coleman* requirement of "imminent public danger" applies to a community caretaker stop.[13] We note that other jurisdictions have not taken a uniform approach to this issue; for instance, one court has held that, under appropriate circumstances, the police are justified in stopping a vehicle to warn the occupants that an item of property is endangered,[14] while another jurisdiction permits community caretaker stops only when there is "imminent danger to life or limb."[15]

We have no reason in this case to resolve where Alaska stands on this continuum because the district court's factual findings establish that Sergeant Erickson had reasonable suspicion to believe Weil's conduct posed

6. *Howell*, 115 P.3d at 589–90; *Marsh*, 838 P.2d at 820.

7. *See Rogers–Dwight v. State*, 899 P.2d 1389, 1390 (Alaska App.1995); *Russell v. Anchorage*, 706 P.2d 687, 689 (Alaska App.1985).

8. 706 P.2d at 689.

9. *See, e.g., United States v. King*, 990 F.2d 1552, 1560–61 (10th Cir.1993) (holding that motorist's persistent honking during traffic jam at accident site gave officer articulable basis to believe motorist might cause another accident, and therefore justified brief contact to warn motorist to stop honking, regardless of whether the conduct violated any traffic laws); *State v. Harrison*, 111 Ariz. 508, 533 P.2d 1143, 1144 (1975) (holding that officer's public safety duties justified stopping vehicle because it was weaving somewhat and rear tire was bouncing); *State v. Pinkham*, 565 A.2d 318, 319–20 (Me.1989) (holding that safety reasons can justify stop in the absence of suspected traffic infraction if the stop is based upon specific and articulable facts and not a pretext stop; case remanded for determination as to whether officer was justified in stopping motorist to warn him of improper lane usage);

*State v. Oxley*, 127 N.H. 407, 503 A.2d 756, 759 (1985) (holding that officer was justified in stopping motorist to ensure that furniture that appeared inadequately secured did not fall onto the public highways and endanger other drivers).

10. *Pinkham*, 565 A.2d at 319.

11. 553 P.2d 40, 46 (Alaska 1976).

12. *State v. G.B.*, 769 P.2d 452, 456 (Alaska App. 1989) (quoting *Coleman*, 553 P.2d at 46).

13. *See Crauthers*, 727 P.2d at 11 (noting that a community caretaker stop is not analyzed as an investigatory stop requiring articulable suspicion).

14. *State v. Chisholm*, 39 Wash.App. 864, 696 P.2d 41, 43 (1985) (remanding for consideration of whether officer was justified in stopping vehicle solely for the purpose of informing the driver that his hat was in jeopardy of blowing out of the bed of the vehicle).

15. *Provo City v. Warden*, 844 P.2d 360, 364 (Utah App.1992).

an imminent public danger. Judge Illsley found that Erickson observed Weil approaching Kalifornsky Beach Road on his four-wheeler with a dog tethered on a twenty-foot lead; it was dark out and there was traffic on the road. These circumstances gave Erickson reason to believe that motorists might be forced to take evasive action if Weil continued across the road.

At the time Sergeant Erickson contacted Weil, neither the dog nor the four-wheeler had yet ventured onto the main road. But Erickson was not obliged to wait for an accident to happen to contact Weil;[16] the purpose of the stop was to avoid that possible outcome, and if Erickson had not immediately observed signs that Weil was intoxicated, the stop would have been brief and non-intrusive.[17] We conclude that the stop was lawful, even if the *Coleman* requirement that the police have reasonable suspicion of imminent public danger applies to a community caretaker stop in the circumstances of this case.

### Conclusion

We AFFIRM the decision of the district court.

---

16. *Dionne v. State,* 766 P.2d 1181, 1183 (Alaska App.1989) ("It is not necessary that the officer observe someone do something dangerous; it is enough that the officer have reason to suspect that the person to be stopped is dangerous.").

17. *G.B.,* 769 P.2d 452 (Alaska App.1989) (noting that a minimally intrusive investigatory stop may be justified in circumstances in which the potential harm is less serious).